CHEFF *v.* TERPSTRA.

1. APPEAL AND ERROR—MOOT QUESTION—DEATH OF RACEHORSE.
   Death of racehorse, the subject matter of contract, rendered moot the consideration by the Court of Appeals of issue raised by defendant of a right of termination, if any, on the part of plaintiff.

2. PLEADING—ILLEGAL CONTRACTS—AFFIRMATIVE DEFENSES—COURT RULES.
   Illegality of contract is an affirmative defense which must, under the court rules, be set forth in the pleadings so as not to take the adverse party by surprise (GCR 1963, 111.7).

3. TRIAL — AFFIRMATIVE DEFENSES — PLEADING — MOTION FOR NEW TRIAL.
   An affirmative defense may not be raised on a motion for new trial where not interposed during trial (GCR 1963, 111.7).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 760 *et seq.*
[2] 41 Am Jur, Pleadings § 159.
[3, 4] 39 Am Jur, New Trial § 26 *et seq.*

4. APPEAL AND ERROR—ILLEGAL CONTRACTS—AFFIRMATIVE DEFENSE—
    PLEADING—COURT RULES—MOTION FOR NEW TRIAL.

> Claim of defendant that plaintiff was not entitled to legal relief
> because his complaint was based upon an illegal contract *held*,
> not subject to consideration by the Court of Appeals, where
> said issue was raised for the first time on defendant's motion
> for new trial, since a motion for a new trial cannot be made
> the vehicle for raising questions not raised at trial, and il-
> legality of contract is an affirmative defense required by court
> rule to be set forth in the pleadings so as not to take the
> adverse party by surprise (GCR 1963, 111.7).

Appeal from Ottawa; Smith (Raymond L.), J.
Submitted Division 3 March 8, 1967, at Grand
Rapids. (Docket No. 2,306.) Decided June 13,
1967. Leave to appeal denied November 14, 1967.
See 379 Mich 787.

Complaint by P. T. Cheff against Julia Terpstra
seeking possession of a certain racehorse alleged
to belong to plaintiff, together with an accounting
between the parties with respect to the earnings
from this horse and another. Judgment for plain-
tiff. Defendant's motion for judgment notwith-
standing the verdict or a new trial was denied.
Defendant appeals. Affirmed.

*James W. Bussard,* for plaintiff.

*Lokker, Boter & Dalman,* for defendant.

HOLBROOK, J. In October of 1956, defendant
Julia Terpstra purchased and received certificate
of registration for a mare named Julia Wick.
Plaintiff, P. T. Cheff, subsequently paid defendant
one half of the purchase price for the mare and
an agreement was formed between plaintiff and
defendant to race Julia Wick and share equally
the profits, if any, after deduction of expenses.

The agreement, according to plaintiff, also pro-
vided for breeding the mare on termination of

her racing career, the offspring to be jointly owned. Defendant denied this part of the agreement stating that after Julia Wick dropped a foal prematurely, Cheff showed no interest and made no contribution for breeding fees. In 1963, Julia Wick had a colt named Cecil T, certificate of registration being issued to defendant.

In September of 1960, plaintiff, through his agent, James Helder, purchased a standardbred pacer named Mike Pick. This horse was brought to the stables owned by defendant where Helder trained the horse, aided on occasion by defendant. In May of the following year, plaintiff transferred Mike Pick's certificate of registration to defendant so that she appeared as the registered owner of the horse. On Helder's death in July of 1961, an agreement was reached between the parties—viz: Defendant was to train and race Mike Pick, to deduct costs and expenses and share equally the net profits with plaintiff.

Mike Pick became unsound for racing purposes in late 1961 and defendant contended that in December of that year plaintiff gave the horse to her as a gift. Defendant gave Mike Pick a great deal of attention and care improving his condition so that he could be raced again. Then appearing as owner, signing race eligibility papers and paying stake fees, defendant raced Mike Pick. While the earnings in 1962 were nominal, they became substantial in 1963 and 1964.

Plaintiff made no contributions to the care and other expenses for Mike Pick; however, in December, 1963, he wrote defendant requesting an accounting. In response to the request, defendant sent plaintiff a check in the amount of $4,800. At the trial defendant claimed that this payment constituted a gift reimbursing plaintiff for the original

cost of Mike Pick and was not intended as a part payment of the horse's winnings.

On July 9, 1965, plaintiff filed an action for claim and delivery of Mike Pick, also for an accounting as to earnings of Mike Pick and Julia Wick.

The jury found plaintiff to be the owner of Mike Pick and owner of one-half interest in Julia Wick and Cecil T. The jury also found the gross earnings of Mike Pick to be $60,340, less a credit for expenses of $36,000 and a further credit for prior payment to Cheff of $4,800; similarly, the gross earnings of Julia Wick were found to be $6,061, less a credit for expenses for the mare and her colt of $10,000. The judgment entered required defendant to deliver Mike Pick to plaintiff and pay the sum due to plaintiff in accordance with the jury's determination.

In pursuing this appeal, defendant retained possession of Mike Pick, filing a bond to protect plaintiff's interests. The following issues are raised by defendant: (1) Whether plaintiff had a right to terminate the agreement of the parties as to Mike Pick, (2) whether the agreement was an illegal contract and therefore a void contract,* and (3) whether defendant may obtain relief upon finding the agreement of the parties to be an illegal contract.

During oral arguments, the Court was informed of the death of Mike Pick on February 2, 1967. This death renders moot consideration by us as to the issue raised by defendant of a right of termination, if any, on the part of plaintiff.

---

* Defendant contends the agreement of the parties to be an illegal contract and therefore a void contract in light of certain rules and regulations of the Michigan racing commission governing harness racing enacted pursuant to CLS 1961, § 431.36 (Stat Ann 1965 Cum Supp § 18.966[6]).

With reference to Julia Wick, the jury found equal ownership by plaintiff and defendant. Defendant does not question this determination.

The second issue raised by defendant presents the claim of illegality. Under GCR 1963, 111.7, illegality is an affirmative defense in Michigan and facts constituting this affirmative defense are to be set forth in the pleadings so as not to take the adverse party by surprise. This, defendant failed to do. The claim of illegality was made for the first time in defendant's motion for new trial. In *Bennett* v. *Denton* (1917), 194 Mich 610, 612, the Michigan Supreme Court held that where the statute of frauds, an affirmative defense, was not "interposed on the trial, it was too late to raise it on a motion for new trial." And in *Mesh* v. *Citrin* (1941), 299 Mich 527, 535, 536, the Michigan Supreme Court stated that "we have repeatedly held that motion for new trial cannot be made the vehicle for raising questions not raised on the trial."

For reasons stated, defendant's third issue need not be considered.

Affirmed. Costs to appellee.

FITZGERALD, P. J., and BURNS, J., concurred.