*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAW OFFICES OF JEFFREY SHERBOW, PC,

                Plaintiff-Appellant/Cross-Appellee,

v

FIEGER & FIEGER, PC, doing business as
FIEGER, FIEGER, KENNEY & HARRINGTON,
PC,

                Defendant-Appellee/Cross-
                Appellant.

FOR PUBLICATION
January 15, 2019
9:00 a.m.

No. 338997
Oakland Circuit Court
LC No. 2015-147488-CB

Before: MURRAY, C.J., and SHAPIRO and RIORDAN, JJ.

RIORDAN, J.

In this contract dispute regarding a referral fee between two law firms, plaintiff appeals as of right and defendant cross-appeals as of right the trial court's entry of judgment after a jury trial. Defendant's cross-appeal is of the trial court's previous order denying defendant's motion for summary disposition. We affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

In the years preceding 2012, Jeffrey Sherbow, an attorney and the sole proprietor of plaintiff, had a working relationship with Charles Rice, who ran a business in Detroit. During the early morning hours of July 13, 2012, Charles was in a fatal automobile accident in Ohio. The other passengers in the vehicle at the time of the accident—Mervie Rice, Dorothy Dixon, and Philip Hill—were seriously injured. Dixon was taken to an Ohio hospital and placed in a medically-induced coma.

When Dion Rice, Charles and Dixon's son, was informed of the accident, he called Charles's business associate, requesting Sherbow's contact information for legal advice. Over the course of the following days, Sherbow and Dion had several conversations via telephone and eventually agreed to meet at Charles's home, where Dion was staying. During that same time period, Sherbow also had several conversations with Jeffrey Danzig, who is an attorney and at

the time was a named partner at defendant firm, and commenced the process of referring the personal injury and no-fault cases of Dixon, Mervie, Hill, and Charles's Estate to defendant. Danzig agreed that, for Sherbow's referral, he would be paid one-third of any contingent fee that defendant ultimately earned from the cases.

Sherbow testified he told Dion, when they met at Charles's house, that he was not equipped to deal with such serious cases, being a sole practitioner, but that he had a friend at defendant to whom he could refer the case. Sherbow said Dion was receptive to the suggestion and assisted Sherbow in reaching out to the other clients. Dion testified that, at the time of the meeting, he and his family had already decided to retain defendant. In either event, Sherbow, Dion, and Danzig set up a meeting for July 26, 2012, at defendant's office. Mervie also was present at the meeting. According to Sherbow, Hill originally was supposed to attend the meeting, but could not make it, and Dixon was still in a medically-induced coma in Ohio.

At the July 26, 2012 meeting, Mervie and Dion signed retainer agreements with defendant. Dion agreed to defendant's representation of Dixon and Charles's Estate. While those retainer agreements did not reflect any referral agreement that defendant had with plaintiff, Danzig and Sherbow testified that Danzig informed Mervie and Dion of the agreement and that those two did not object. Mervie and Dion testified that they did not believe they were informed, could not remember everything that was said during the meeting, but that if they had been informed, they would have objected. Mervie further testified that she decided to retain defendant after seeing a commercial on television and called defendant's office without being referred. Danzig later met with Hill and Dixon, where, according to Danzig, he informed them of the referral fee that plaintiff would be paid, and that Hill and Dixon did not object. Like Dion and Mervie, Hill and Dixon testified that they did not believe they were informed of the referral agreement, could not remember the entire conversation with Danzig, but that if they had been informed, they would have objected.

Danzig sent two letters to Sherbow, one on August 2, 2012, and the second on August 15, 2012, reciting that defendant had "accepted the above-captioned matters on referral from you and your office and are hereby acknowledging your one-third referral fee in these matters." Because the cases were being tried in Ohio, defendant sought the assistance of an Ohio law firm. When the Ohio firm demanded 20% of the contingent fee earned in the case, Sherbow agreed to have his referral fee lowered to 20% as well. Danzig memorialized that new agreement in a letter dated January 2, 2014, which specifically noted that Sherbow was to receive 20% of the contingent fee for his referral of the cases.

Eventually, defendant was successful in its representation of the clients, obtaining an award of $10.225 million, out of which a contingent fee of $3,408,333.34 was paid to defendant. When defendant refused to pay 20% of that fee, or $681,666.67, to Sherbow, plaintiff brought the instant litigation, asserting a claim of breach of contract. Defendant moved for summary disposition three separate times, arguing, among other things, that the referral fee contract violated MRPC 1.5(e) and thus was unenforceable, and that Danzig did not have the authority to bind defendant to a contract with plaintiff. With respect to a violation of MRPC 1.5(e), defendant provided evidence from Dion, Mervie, Dixon, and Hill that they were not aware of the referral fee agreement and even if they had been, they would have objected. Plaintiff countered with evidence from Sherbow and Danzig that the clients were informed and did not object.

Further, plaintiff argued that Danzig had the apparent authority to bind defendant where Danzig was a named partner, appeared on the firm's letterhead, and was the head of defendant's intake department. The trial court agreed with plaintiff and denied the motions for summary disposition.

The case then proceeded to trial, largely focused on the issues of whether Danzig had the actual or apparent authority to bind defendant to the referral fee contract, and if so, whether the contract violated MRPC 1.5(e) and thus was unenforceable as a matter of public policy. After three days of testimony, the trial court, over plaintiff's repeated objections, instructed the jury that plaintiff had to prove by a preponderance of the evidence that MRPC 1.5(e) had not been violated and that, in order for plaintiff to be entitled to judgment, Sherbow had to have had attorney-client relationships with Dion on behalf of Charles's Estate, Mervie, Dixon, and Hill at the time of the referral. The verdict form, to which plaintiff also objected, asked the jury to answer two questions with respect to each client: "Were any of the following clients of Jeffrey Sherbow," and "[i]f yes to any part of 1, did Plaintiff refer one, some, or all of the following personal injury cases to Defendant?" The verdict form then had a third, general question: "If yes to any parts of 1 and 2, did Jeffrey Danzig have actual or apparent authority to bind Fieger Firm?"

The jury answered that Sherbow had an attorney-client relationship with Dion on behalf of Charles's Estate and actually referred that case to defendant. The jury found the opposite for the other three clients. As for the third question, the jury determined that Danzig did have the actual or apparent authority to bind defendant to a contract. Thus, the trial court entered judgment in favor of plaintiff with respect to the contingent fee earned for Charles's Estate, awarding plaintiff $93,333.33, and for no cause of action for the remaining three claims. Plaintiff moved for judgement notwithstanding the verdict (JNOV) with respect to the fees arising from Dixon's case, arguing that Dion acted on behalf of both Charles's Estate and Dixon while she was in the coma. The trial court denied that motion. This appeal followed.

## II. SUMMARY DISPOSITION

Defendant argues that the trial court should have granted its motion for summary disposition. We disagree.

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Bennett v Detroit Police*

-3-

*Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). Similarly, a trial court's "construction of the rules of professional conduct" is a legal issue this Court reviews de novo. *Grievance Administrator v Fieger*, 476 Mich 231, 240; 719 NW2d 123 (2006). A trial court's decision regarding the existence of a contract is a question of law that we review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "When there is a disputed question of agency, if there is any testimony, either direct or inferential, tending to establish it, it becomes a question of fact . . . ." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 556-557; 581 NW2d 707 (1998) (quotation marks omitted).

## B. VIOLATION OF MRPC 1.5(e)

Defendant argues that there was no question of fact that the referral fee contract violated MRPC 1.5(e) and was therefore unenforceable as a matter of public policy. We disagree.

## 1. APPLICABLE LAW

"[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties[.]" *In re Mardigian Estate*, 312 Mich App 553, 562; 879 NW2d 313 (2015), aff'd 502 Mich 154 (2018). "Before a contract can be completed, there must be an offer and acceptance." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (quotation marks omitted). "In order for there to be an enforceable agreement between the parties, there must be 'mutual assent' to be bound—that is, the parties must have a 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014).

"Parties are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017). "Absent some specific basis for finding them unlawful, courts cannot disregard private contracts and covenants in order to advance a particular social good." *Terrien v Zwit*, 467 Mich 56, 70; 648 NW2d 602 (2002). As this Court has held, Michigan courts apply "the fundamental principle that contracts that violate our ethical rules violate our public policy and therefore are unenforceable." *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002). "[C]ontracts containing performance requirements that would violate the MRPC are not enforceable because such contracts contradict Michigan's public policy." *Morris & Doherty, PC v Lockwood*, 259 Mich App 38, 58; 672 NW2d 2003).

Defendant contends that the referral fee contract between it and plaintiff violated MRPC 1.5(e). "The rules of statutory construction also apply to rules promulgated by the Michigan Supreme Court, such as the Michigan Court Rules (MCR), the MRPC, and the SBR." *Morris & Doherty*, 259 Mich App at 44.[1] We begin with the plain language of MRPC 1.5(e), which states

---

[1] This Court recently restated the proper procedure for such interpretation:

that, "[a] division of a fee between lawyers who are not in the same firm may be made only if . . . the client is advised of and does not object to the participation of all the lawyers involved; and . . . the total fee is reasonable."

## 2. ANALYSIS

The parties primarily disagree about the meaning of "advised of and does not object to" the agreement. MRPC 1.5(e). Defendant argues that the rule requires proof that the clients actually affirmatively consented to the agreement after being informed. Plaintiff, meanwhile, argues that the rule requires only proof that the clients were informed and remained silent. Plaintiff is correct. The words used in MRPC 1.5(e) are clear and unambiguous and require only that clients be "advised of" a referral fee agreement, and then do "not object" to it. A lack of objection by the clients, as required by the rule, does not mean that the client has to affirmatively approve of the agreement. If the drafters of MRPC 1.5(e) wished to require that clients had to give their affirmative consent to a referral fee agreement, they would have written that requirement into the rule. As it now stands, the rule unambiguously only requires that clients be advised and not object to the referral fee agreement. *Id*.

Thus, summary disposition properly was denied as there was a genuine issue of material fact regarding whether the clients were aware of the fee split agreement and did not object to it. MRPC 1.5(e). Defendant suggests that it provided such evidence based on affidavits, letters, and deposition testimony from the clients providing that they were not told of the fee split agreement, and, had they been, they would have objected.[2] However, Sherbow and Danzig, who both attended the meeting on July 26, 2012, averred and testified that Danzig did advise Dion and Mervie of the fee split agreement, to which they did not object. Further, Danzig averred and testified that he told Hill and Dixon about the same agreement, and that neither of them objected.

---

[W]e look to the plain language of the [] rule in order to ascertain its meaning and the intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the [] Rules as a whole. If the rule's language is plain and unambiguous, then judicial construction is not permitted and the rule must be applied as written. [*Sanders v McLaren-Macomb*, 323 Mich App 254, 266-267; 916 NW2d 305 (2018) (citations and quotations omitted).]

[2] Defendant claimed at oral argument that Sherbow could not have referred all of the clients because Mervie testified that she called defendant's office of her own accord on July 17, 2012. However, Sherbow's testified that he learned Dion wished to speak with him on July 13, 2012. Sherbow then spoke to Danzig that same day. After speaking with Dion, Sherbow began the referral process on July 14, 2012. Among those whom Sherbow claims he included in that referral were Charles's Estate, Dixon, Hill, and Mervie. Further, Danzig testified that he contacted Mervie for the first time using a telephone number provided by Sherbow. Thus, there still is a question of fact regarding the origin of the referral.

Thus, there was a genuine issue of material fact regarding the relevant inquiry. MRPC 1.5(e). Consequently, summary disposition properly was denied. *Maiden*, 461 Mich at 120.[3]

## C. APPARENT AUTHORITY OF DANZIG

Defendant also argues that the trial court should have granted its motion for summary disposition where there was no question of fact that Danzig did not have the authority to bind defendant to the referral fee contract. We disagree.

### 1. APPLICABLE LAW

"An agent is a person having express or implied authority to represent or act on behalf of another person, who is called his principal." *Stephenson v Golden*, 279 Mich 710, 734; 276 NW 849 (1937) (quotation marks omitted). More specifically, "[a]n agency is defined as a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may

---

[3] Defendant contends that we should consider Howard Linden, not Dion, as the client with respect to Charles's Estate for purposes of MRPC 1.5(e). We decline to consider this argument for several reasons. First, defendant's cross-appeal was limited to the trial court's opinion and order regarding summary disposition, in which the trial court did not actually address defendant's contention that Linden properly was considered the client. *Elahham v Al-Jabban*, 319 Mich App 112, 120; 899 NW2d 768 (2017) (holding that an issue is unpreserved and need not be considered where "the trial court did not directly address and decide the . . . issue raised . . . ."). Second, the trial court actually addressed the issue during jury instructions, when it decided to instruct the jury that Dion was considered the client with respect to Charles's Estate. Defendant does not recognize that decision by the trial court nor mention anything regarding its argument that Linden actually was the client in its statement of questions presented. Instead, defendant only asserts that the trial court erred in deciding the motion for summary disposition. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief . . . ."). Third, we note that defendant's argument that Linden actually was the client for purposes of MRPC 1.5(e) is belied by defendant's own behavior. To wit, throughout discovery, defendant only provided one retainer agreement for its representation of Charles's Estate—the one signed by Dion. Thus, it is clear that defendant considered Dion as the legal representative of Charles's Estate, considering a contingent-fee agreement, such as the one at issue in this case, is required to be in writing. Absent the contract signed by Dion, defendant has provided no such written contract with Linden or any other party related to the estate. If there is no written contract with Linden, defendant's relationship with him, if he indeed, as claimed, was defendant's client, appears inconsistent with MRPC 1.5(c), which states that, "[a] contingent-fee agreement shall be in writing and shall state the method by which the fee is to be determined." Fourth, and finally, at the time defendant signed a retainer agreement with Dion on behalf of Charles's Estate, Linden had not yet been appointed as the personal representative of the estate. Consequently, at the time the bargain was struck between plaintiff and defendant regarding the referral fee, both plaintiff and defendant were treating Dion as the client with respect to Charles's Estate.

act on behalf of another party (the principal) and bind that other party by words or actions." *Logan v Manpower of Lansing, Inc*, 304 Mich App 550, 559; 847 NW2d 679 (2014) (quotation marks omitted). With respect to agencies, "we consider 'the relations of the parties as they in fact exist under their agreements or acts' and note that in its broadest sense agency 'includes every relation in which one person acts for or represents another by his authority.' " *St Clair Intermediate Sch Dist*, 458 Mich at 557, quoting *Saums v Parfet*, 270 Mich 165, 170-171; 258 NW 235 (1935). "[F]undamental to the existence of an agency relationship is the right to control the conduct of the agent . . . with respect to the matters entrusted to him." *St Clair Intermediate Sch Dist*, 458 Mich at 558 (citation omitted).

"The authority of an agent to bind a principal may be either actual or apparent." *Alar v Mercy Mem Hosp*, 208 Mich App 518, 528; 529 NW2d 318 (1995). "Actual authority may be express or implied. Implied authority is the authority which an agent believes he possesses." *Meretta v Peach*, 195 Mich App 695, 698; 491 NW2d 278 (1992). "Actual authority of an agent may be implied from the circumstances surrounding the transaction at issue." *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995). "These circumstances must show that the principal actually intended the agent to possess the authority to enter into the transaction on behalf of the principal." *Id*. "Apparent authority arises where the acts and appearances lead a third person reasonably to believe that an agency relationship exists. However, apparent authority must be traceable to the principal and cannot be established only by the acts and conduct of the agent." *Alar*, 208 Mich App at 528.[4]

2. ANALYSIS

_____

[4] The Michigan Supreme Court provided the following relevant summary of law involving apparent authority:

> Whenever the principal, by statements or conduct, places the agent in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results which replaces that actually conferred as the basis for determining rights and liabilities. The measure of authority consists of those powers which the principal has thus caused or permitted the agent to seem to possess, whether the agent had actual authority being immaterial if his conduct was within the apparent scope of his powers; the question involved is no longer what authority was actually given or was intended by the parties to the agency agreement, but resolves itself instead into the determination of what powers persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe him to have on the basis of the principal's conduct. Absence of intention to confer any power of the character of that exercised cannot be asserted so as to avoid or vitiate the authority, for the agent's authority as to those with whom he deals is what it reasonably appears to be. [*Central Wholesale Co v Sefa*, 351 Mich 17, 25; 87 NW2d 94 (1957), quoting 2 CJS, Agency, § 96, pp 1210-1211.]

On cross-appeal, defendant argues that the trial court should have granted summary disposition in its favor on the issue of Danzig's apparent or actual authority to bind defendant to the referral contract. Before the trial court and now on appeal, the parties' arguments center on the issue of Danzig's apparent authority. When arguing the summary disposition motion, defendant provided evidence that it had a policy barring any partner or employee from agreeing to pay referral fees without the express approval of Geoffrey Fieger. In response, plaintiff provided evidence that Danzig had such authority, exercised it often, and almost never got approval from Fieger. In determining whether summary disposition was warranted, a trial court is required to consider "all surrounding facts and circumstances" to determine "whether an ordinarily prudent person, conversant with" the business in question, "would be justified in assuming" that Danzig "had the authority to" enter into the relevant contract on defendant's behalf. *Meretta*, 195 Mich App at 699. The inquiry must focus on the actions of defendant when determining whether Danzig had apparent authority. *Alar*, 208 Mich App at 528.

Defendant argues that the trial court erred by relying on the statements and actions of Danzig in finding that there was a question of fact regarding Danzig's apparent authority. While defendant claims that it did nothing to establish a third party's reasonable belief in Danzig's apparent authority, the record shows otherwise. First, defendant made Danzig a partner in the law firm, which reasonably suggests to those dealing with Danzig that he acted on behalf of defendant. Second, defendant decided to put Danzig's name in the title of the firm which is listed on the firm's letterhead. Thus, those dealing with Danzig via written correspondence, as was the case here, could reasonably have believed that defendant had designated Danzig as an agent to make contracts on behalf of defendant. Third, defendant named Danzig as the head of the intake department. Therefore, in addition to being a named partner and appearing on the letterhead, defendant also cloaked Danzig in apparent authority by appointing him as the head of the department that was most particularly involved here—the intake department. Based on that evidence, a reasonable jury could determine (and did in this case) that, given defendant's actions and assertions, a third party could reasonably have believed that Danzig had the authority to enter into the given contract. See *id*. The fact that defendant had an internal policy that any referrals had to be approved by Fieger does not affect our conclusion, because the inquiry properly is focused on Danzig's apparent, rather than actual, authority. See *Central Wholesale Co v Sefa*, 351 Mich 17, 25; 87 NW2d 94 (1957) (quotation marks omitted).

The trial court properly denied defendant's motion for summary disposition because there was a genuine issue of material fact regarding whether Danzig had the apparent authority to bind defendant to the relevant contract.

## III. EVIDENCE

Plaintiff argues that the trial court abused its discretion when it allowed Mervie, Dixon, and Hill to testify about objections to the referral fee agreement that occurred after the time they were informed of it.

## A. STANDARD OF REVIEW

This Court recently restated the proper standard of review for evidentiary issues such as those presented here:

The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. However, preliminary questions of law, including the interpretation and application of statutes and legal doctrines, are reviewed de novo, and the trial court necessarily commits an abuse of discretion if it makes an incorrect legal determination. [*Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 566, 571; 918 NW2d 545 (2018) (quotation marks and citations omitted).]

## B. APPLICABLE LAW & ANALYSIS

"To be admissible, evidence must be relevant." *Rock v Crocker*, 499 Mich 248, 256; 884 NW2d 227 (2016), citing MRE 402. "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Rock*, 499 Mich at 256, quoting MRE 401. At issue here was whether the clients knew of the referral fee agreement and did not object, so as to conform to the mandates of MRPC 1.5(e).

Plaintiff posits that the only objection relevant to the case is an objection by the clients made at the time they were informed of the agreement. Therefore, plaintiff argues, the trial court should have barred the clients from testifying about any objections to the referral fee that arose *after* the agreement was made. While plaintiff is correct that defendant was required to prove that the clients objected to the referral fee agreement at the time they were informed, that does not render a later objection entirely irrelevant so as to be inadmissible. The United States District Court for the Eastern District of Michigan has provided persuasive analysis on the issue of when clients must object pursuant to MRPC 1.5(e):

The rule does not specify when objections to a lawyer's participation must be lodged. Nor does the interpretive ethics opinion provide guidance on this issue; rather, pointing to other ethics rules, the opinion focuses on the type of advice that must be given by both the referring and receiving lawyer, such as "who will be working on the case, what services each lawyer will render to the client, and who is responsible for the matter." [State Bar of Michigan Ethics Opinion] RI–234, at 2 (1995).

Since a fee agreement is a contract, obligations became fixed once there was a meeting of the minds. See *Port Huron Ed Assoc v Port Huron Area School Dist*, 452 Mich 309, 326-327; 550 NW2d 228 (1996) (binding contract created when there is meeting of the minds; meeting of the minds likewise required to modify or cancel contract); *Groulx v Carlson*, 176 Mich App 484, 491; 440 NW2d 644 (1989). To allow subsequent events, such as a mere change of heart, to upset the referral arrangement is inconsistent with basic contract law. *Port Huron Ed Assoc*, 452 Mich at 326-327. Further, it would be unwise as a matter of policy to permit a client by whim or fancy, or perhaps more nefarious motives, to undo a referral contract after the lawyers' work is finished but before final

payment. [*Idalski v Crouse Cartage Co*, 229 F Supp 2d 730, 738-739 (ED Mich, 2002).]

We find this analysis to be persuasive. Plaintiff is correct that the clients must have objected at the time they were informed of the agreement in order for there to be a violation of MRPC 1.5(e). See *Idalski*, 229 F Supp 2d at 738-739.

However, later objections are not irrelevant and inadmissible. First, looking at the analysis in *Idalski*, later objections were not deemed irrelevant, only that an objection had to occur at the time of being informed in order for the contract to violate MRPC 1.5(e) and be rendered unenforceable. In a case like this, the later objections remain relevant. At trial, Danzig testified that he informed all of the clients of the fee agreement and that they did not object. Sherbow agreed with respect to the July 26, 2012 meeting that he attended. Mervie, Hill, and Dixon, however, testified that they did not believe they had been informed of the referral agreement, because they could not specifically remember the conversation that had taken place more than four years before trial, but that if they had been informed they would have objected.

While the objection by the clients voiced at trial could not invalidate the contract pursuant to MRPC 1.5(e), it does make it more likely that the clients *were not* informed of the referral fee agreement. Obviously, a person cannot object to information that they did not receive. Thus, when the clients testified that they either were not informed or did not remember being informed of the referral agreement, it was only logical that they did not object at the time. Therefore, their failure to remember objecting or being informed of the agreement in 2012, and their testimony that they believed they would have objected if informed, makes it more likely that they were not informed. That testimony is relevant because if the jury believed the clients that they would have objected if informed, but that they did not object at the time, then it would be logical to infer that they must not have been informed. Therefore, while the objections to the referral fee agreement at the time of trial were not relevant to whether the clients objected at the time they were informed, those objections *were* relevant to whether the clients in fact were informed.

Thus, because that testimony " 'ma[de] the existence of any fact that is of consequence to the determination of the action more probable . . . than it would be without the evidence,' " it was admissible. *Rock*, 499 Mich at 256, quoting MRE 401. The challenged evidence was relevant and admissible, and the trial court did not abuse its discretion in admitting it at trial. See *Mueller*, 323 Mich App at 571. However, given the limited relevance of the testimony, the trial court should consider any request for a limiting instruction regarding the evidence made by plaintiff during any retrial.

IV. JURY INSTRUCTIONS & VERDICT FORM

Plaintiff argues that it is entitled to a new trial based on prejudicial legal errors made by the trial court when instructing the jury and approving the proposed verdict form. We agree.

A. STANDARD OF REVIEW

"We review de novo properly preserved instructional errors . . . ." *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 626; 792 NW2d 344 (2010). "Whether the trial court's

instruction on the applicable burden of proof was proper is a question law that this Court reviews de novo." *Stein v Home-Owners Ins Co*, 303 Mich App 382, 386-387; 843 NW2d 780 (2013). We "consider the jury instructions as a whole to determine whether they adequately present the theories of the parties and the applicable law." *Alpha Capital*, 287 Mich App at 626-627. "Instructional error warrants reversal when it affects the outcome of the trial." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 681; 819 NW2d 28 (2011), citing MCR 2.613(A). Stated differently, "a verdict should not be set aside unless failure to do so would be inconsistent with substantial justice." *Jimkoski v Shupe*, 282 Mich App 1, 9; 763 NW2d 1 (2008).

## B. BURDEN OF PROOF

Plaintiff argues that the trial court committed reversible error by instructing the jury that plaintiff had the burden of proof with respect to defendant's affirmative defense that the contract violated MRPC 1.5(e). We agree.

### 1. APPLICABLE LAW & ANALYSIS

Pursuant to MCR 2.111(F)(3)(a)-(b), an argument "that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery," or "that by reason of other affirmative matter seeks to avoid the legal effect or defeat the claim of the opposing party, in whole or in part," is an affirmative defense. More generally, "[a]n affirmative defense is a defense that does not controvert the plaintiff's establishing a prima facie case, but that otherwise denies relief to the plaintiff." *Detroit Edison Co v Stenman*, 311 Mich App 367, 382; 875 NW2d 767 (2015), quoting *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 312; 503 NW2d 758 (1993). "[I]t is a matter that accepts the plaintiff's allegation as true and even admits the establishment of the plaintiff's prima facie case, but that denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Detroit Edison Co*, 311 Mich App at 382, quoting *Stanke*, 200 Mich App at 312.

In this case, defendant and plaintiff had a written contract, which required defendant to pay plaintiff 20% of the contingent fee defendant earned in the litigation involving Mervie, Dixon, and Hill. Although defendant challenged Danzig's authority to bind defendant to that contract, the jury explicitly disagreed. Thus, under applicable agency and contract law, defendant and plaintiff had a contract. Defendant's alternate argument, which is at issue here, was that the contract should be found unenforceable as violative of Michigan's public policy. Defendant contends that the contract violated public policy because it was made without fully complying with MRPC 1.5(e), which required the clients to be informed of the referral fee agreement and to not object. Defendant sought "to avoid the legal effect" of the contract on public policy grounds, MCR 2.111(F)(3)(b), or to establish "that [the contract was] void [or] voidable," MCR 2.111(F)(3)(a). Pursuant to MCR 2.111(F)(3), such an argument is an affirmative defense, because it "is a defense that does not controvert [] plaintiff's establishing [that] a prima facie [contract exists], but that otherwise denies relief to [] plaintiff." *Detroit Edison Co*, 311 Mich App at 382.

For affirmative defenses, "a party must assert [them] and has the burden of providing evidence in support." *Williamstown Twp v Sandalwood Ranch, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 337469), slip op at 6, lv pending, citing *Attorney General ex*

*rel Dep't of Environmental Quality v Bulk Petroleum Corp*, 276 Mich App 654, 664; 741 NW2d 857 (2007). "Only after such evidence has been introduced does the burden shift to the plaintiff to produce clear and decisive evidence to negate the defense." *Williamstown Twp*, ___ Mich App at ___; slip op at 6 (quotation marks omitted). Thus, pursuant to the Michigan Court Rules and established caselaw, defendant was required to bear the burden of proof with respect to its affirmative defense. See *id*.; MCR 2.111(F)(3).

Defendant argues that to prove a contract, a party is required to prove that the contract involved a legal subject matter. It is true that one element of a valid contract is that the contract is in regards to "a proper subject matter . . . ." *Innovation Ventures*, 499 Mich at 508 (quotation marks omitted). However, defendant does not actually contend that the "subject matter" of the contract is illegal, because MRPC 1.5(e) specifically contemplates that referral fees between lawyers are legal, except under certain circumstances. See also *Morris & Doherty*, 259 Mich App 38. Instead, defendant's argument is that the specific contract in question was unenforceable as violative of public policy due to a failure to comply with MRPC 1.5(e). Thus, the trial court erred in instructing the jury to the contrary.[5]

## C. ATTORNEY-CLIENT RELATIONSHIP REQUIREMENT

Plaintiff also argues that the trial court erred when it instructed the jury that Mervie, Hill, and Dixon must have had an attorney-client relationship with Sherbow before being referred to defendant in order to satisfy the requirements of MRPC 1.5(e). We agree.

## 1. APPLICABLE LAW & ANALYSIS

MRPC 1.5(e) (emphasis added), allows that "[a] division of a fee between lawyers who are not in the same firm may be made only if . . . *the client* is advised of and does not object to the participation of all the lawyers involved; and . . . the total fee is reasonable." Considering the plain language of the rule, as this Court must, *Sanders*, 323 Mich App at 266-267, a contract for a referral fee violates MRPC 1.5(e), and is thus unenforceable as against public policy, unless a client has been advised of the agreement and did not object.

Defendant contends, and the trial court agreed at trial, that the use of the word "client" meant that Dixon, Mervie, and Hill had to be Sherbow's clients in order to conform to the rule. Plaintiff argued to the contrary, citing that MRPC 1.5(e) only uses the term "client" to mean that the person would eventually become the client of the firm or lawyer receiving the referral. We agree with plaintiff. This Court's goal is to discover the intent of the Michigan Supreme Court in drafting the rule and to use the language of the rule, as a whole, to determine that intent.

---

[5] Long-standing caselaw establishes that such arguments are affirmative defenses for which a defendant bears the burden of proof. See *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 239; 615 NW2d 241 (2000); see also *Rothschild v Schneider*, 167 Mich 501, 503-506; 133 NW 530 (1911); see also *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 571, 576-577; 485 NW2d 129 (1992); see also *Cheff v Terpstra*, 7 Mich App 141, 145; 151 NW2d 208 (1967) (holding that "illegality of contract is an affirmative defense in Michigan . . . .").

*Sanders*, 323 Mich App at 266-267; *Morris & Doherty*, 259 Mich App at 44. As this Court has held, "MRPC 1.5(e) is designed to prohibit brokering, to protect a client from clandestine payment and employment, and to prohibit aggrandizement of fees." *McCroskey, Feldman, Cochrane & Brock, PC v Waters*, 197 Mich App 282, 286-287; 494 NW2d 826 (1992).

Requiring a party to establish an attorney-client relationship with the referring attorney before a referral takes place adds a new element to the rule and is not part of MRPC 1.5(e) as it is written. See *Waters*, 197 Mich App at 286-287. The requirement to advise the person of the referral fee split and allow them to object destroys the ability of attorneys to engage in clandestine payments to one another and impairs brokering by allowing the potential client to object to the referral fee. *Id*. As to *Waters* concern with "prohibit[ing the] aggrandizement of fees," the client requirement proposed by defendant likely would have the opposite effect, encouraging attorneys to engage in billable work with the person being referred so as to firmly ensure that an attorney-client relationship had been established. See *id*. After all, as our Supreme Court has held, an attorney-client relationship typically is not formed until an attorney "render[s] legal advice and legal services . . . and the client[] reli[es] on that advice or those services . . . ." *Macomb Co Taxpayers Ass'n v L'Anse Creuse Pub Sch*, 455 Mich 1, 11; 564 NW2d 457 (1997).

This additional requirement also has the potential to result in situations where an attorney, who typically would immediately refer a case that they knew they were not qualified or adequately able to handle, might retain the case for a certain period of time. In so doing, that underqualified or underprepared attorney might cause a detriment to the injured party's case. After all, Michigan law with respect to personal injury cases often have exacting statutory requirements (such as medical malpractice, the no-fault act, cases implicating governmental immunity, etc.) which an attorney not versed in that area of law might unwittingly fail to meet. Thus, the Michigan Supreme Court wrote MRPC 1.5(e) in a manner that protects clients from the aforementioned dangers by requiring attorneys who will be representing the party to inform the client of the referral fee and to allow for objection. See *Waters*, 197 Mich App at 286-287. Interpreting the rule's use of the word "client" as suggested by defendant and the trial court would add a requirement not explicitly listed in MRPC 1.5(e), and would work to undermine the overriding purpose of the rule, which is to protect clients. See *Waters*, 197 Mich App at 286-287.[6]

In fact, allowing defendant to misconstrue the rule and then use it to void a contract into which it willingly entered would be a plain misapplication of the MRPC in general. To wit, in the preamble to the MRPC, in the section regarding the scope of the rules, the drafters warned

---

[6] For example, in *Waters*, 197 Mich App at 287, in considering a case where two attorneys disputed the share of a contingent fee already paid, this Court reasoned that the dangers from which MRPC 1.5(e) sought to protect clients was only tangentially applicable: "Plainly, none of these concerns is implicated in this case. The agreement is simply a mechanism for dividing an already existing fee. In other words, this is not a referral situation contemplated by the rule."

that "the purposes of the rules can be subverted when they are invoked by opposing parties as procedural weapons."

In sum, MRPC 1.5(e) does not contain a requirement that Sherbow have an attorney-client relationship with Mervie, Dixon, and Hill, and the trial court erred in instructing the jury to the contrary and including the question on the verdict form.[7]

## D.  REVERSAL IS REQUIRED

Errors regarding jury instructions and jury verdict forms only require reversal where they "affect[] the outcome of the trial." *Hardrick*, 294 Mich App at 681, citing MCR 2.613(A). Additionally, the Michigan Supreme Court has held that erroneous jury instructions require reversal where they "effectively relieved [a party] of their burden of proof and [were] not specific enough to allow the jury to decide the case intelligently, fairly, and impartially." *Cox ex rel Cox v Bd of Hosp Managers for City of Flint*, 467 Mich 1, 15; 651 NW2d 356 (2002) (quotation marks omitted).

The trial court committed two errors when providing jury instructions and provided a jury verdict form that was irredeemably deficient.[8]  The issues tried were whether Danzig had the

---

[7] Although a Michigan appellate court has not yet analyzed the word "client" in MRPC 1.5(e), the Kansas Supreme Court did so and reached the same conclusion.  Despite lacking precedential value, the Kansas Supreme Court's reasoning in analyzing its identical rule is particularly persuasive:

> MRPC 1.5(g) lists two requirements for a division of a fee between lawyers: (1) the *client* is advised and does not object; and (2) the total fee is reasonable.  The word "client" could refer either to the status of a litigant with regard to the referring attorney or with regard to the attorney to whom the matter is referred.  If it refers to the relationship with regard to the referring attorney, the rule mandates an attorney-client relationship with the referring attorney.  It is clear that the litigant would be a client of the attorney to whom the matter is referred.  We adopt what we believe to be the logical interpretation, that "client" refers to the status of the litigant with the attorney to whom the matter is referred.

> Under this construction of the rule and the facts of this case, although it would be preferable, MRPC 1.5(g) does not require that the referring attorney have an attorney-client relationship with the person referred.  Of course, the attorney accepting the referral may impose such a requirement before agreeing to pay a referral fee.  This referral relationship between counsel is a matter of contract between attorneys. [*Ryder v Farmland Mut Ins Co*, 248 Kan 352, 363; 807 P2d 109 (1991).]

We now hold similarly.

[8] Interestingly, the trial court reached the same conclusion before trial, holding that there was no legal support for requiring Sherbow to have an attorney-client relationship with Mervie, Dixon,

actual or apparent authority to bind defendant to the referral contract, and if so, whether the clients were informed about the referral fee and, if so, whether they objected. Despite that, the trial court instructed the jury that it had to determine whether Mervie, Hill, and Dixon were clients of Sherbow. The jury verdict form ordered the jury that if it found that the three individuals were not Sherbow's clients then plaintiff had no claim to its share of the attorney fees from Mervie's, Dixon's, and Hill's cases. The jury answered that there was no such relationship, thereby resulting in a verdict of no cause of action with respect to those three cases. Considering that the jury made a dispositive determination of plaintiff's claims against defendant based on an unnecessary requirement, the error clearly affected the outcome of trial. See *Hardrick*, 294 Mich App at 681.

Plaintiff and defendant both note, however, that the jury continued to answer the second question in the negative as well, finding that Sherbow did not refer Mervie, Dixon, or Hill to defendant. Based on the record provided and the issues that were to be tried, it is not clear what purpose the trial court had in asking that question but, presumably, the trial court was asking the jury to determine if there was consideration for the written referral fee contract. Assuming the trial court was attempting to determine whether there was an enforceable contract based on an actual referral, we believe it is relevant to consider each element the jury was instructed to reach a verdict on to determine the existence of a contract. The trial court instructed the jury that in order for there to be an enforceable, binding contract, plaintiff had to prove by a preponderance of the evidence that Mervie, Dixon, and Hill were aware of the referral agreement and did not object to it. As discussed, defendant actually bore the burden to prove the opposite: that the clients were not informed or did object. Thus, based on the instructions the jury was provided, the jury was required to answer the second question on the verdict form in the negative if it found that plaintiff did not meet its burden of proving that MRPC 1.5(e) was not violated. Considering the trial court's confusing and improper instructions given regarding MRPC 1.5(e) and on the party bearing the burden of proof, defendant was "effectively relieved" of its burden of proof and as a result the jury was not allowed "to decide the case intelligently, fairly, and impartially." *Cox ex rel Cox*, 467 Mich at 15.

We vacate the jury's verdict with respect to the first two questions asked on the verdict form, and remand for a new trial consistent with this opinion.

## V. JNOV

Plaintiff argues both that the trial court erred in denying its motion for JNOV with respect to Dixon and that this Court should grant plaintiff JNOV with respect to Mervie. We disagree.

## A. STANDARD OF REVIEW

This Court "reviews de novo a trial court's decisions regarding motions for JNOV." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). "The

---

and Hill, and that defendant was to bear the burden of proving that MRPC 1.5(e) was violated. Yet, at trial, the trial court reversed course and instructed the jury to the exact opposite.

appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed . . . establish[es] a claim as a matter of law, should the motion be granted." *Id*. (quotation marks omitted).

### B. APPLICABLE LAW & ANALYSIS

Once again, this argument focuses on the interpretation and analysis of MRPC 1.5(e). With respect to Dixon's case, plaintiff presents this particular argument on appeal based on the assumption that the trial court properly instructed the jury and a new trial is not required. Therefore, if it has merit, a new trial would not be required with respect to plaintiff's claim to 20% of the fees from Dixon's case. Plaintiff's argument for JNOV relies on a series of presumptions, the first of which is that Dion entered into a contract for representation with defendant on behalf of Dixon, and thus, for the purposes of MRPC 1.5(e), he was considered the "client" who had to be informed of the referral fee agreement and not object. Plaintiff insists that the trial court erred by not applying the same logic to Dixon given its determination that Dion acted on behalf of Charles's Estate and was considered the "client" under the rule. The trial court's ruling in that regard, however, is not pertinent to the issue presented here. The language of the rule is plain and unambiguous: the client must be advised of the referral fee agreement and not object. MRPC 1.5(e). The record is not disputed that Dion agreed to defendant's representation of Dixon, his mother, at the July 26, 2012 meeting at defendant's office. Dion did so because Dixon was in a medically-induced coma at the time. However, Dixon eventually was brought out of the coma, regained consciousness, and was moved to a rehab facility. While there, testimony at trial showed that Danzig came to visit her and explained defendant's legal representation of her. Danzig further testified that he informed Dixon of the referral fee agreement and that she did not object to it. Dixon presented contrary testimony.

While Dion initially hired defendant on behalf of Dixon, she clearly was given the opportunity to either ratify or exit that contract. As the record makes clear, Dixon approved of the hire. Dixon's acknowledgement that she approved of Dion's decision to retain defendant to represent her does not morph Dion into a "client" with respect to either the contract between defendant and Dixon or pursuant to MRPC 1.5(e). When Dixon recovered from her injuries and had a clear mind, she was told that defendant represented her in the litigation arising out of the automobile accident. At that point, she had the opportunity to terminate that representation and seek alternate counsel. Similarly, when she was informed about the referral fee agreement—if she was—she also had the opportunity to object. Thus, with respect to Dixon, Dion was not considered the "client" pursuant to MRPC 1.5(e). Consequently, the jury's finding that Dion was Sherbow's client, Sherbow referred him to defendant, and that Dion was aware of the referral fee agreement and did not object, did not require a judgment with respect to Dixon. If the jury believed that Dixon was not made aware of the referral fee agreement when she ratified Dion's contract with defendant, then the contract violated MRPC 1.5(e) and was unenforceable as violative of public policy. *Morris & Doherty*, 259 Mich App at 58. Therefore, because judgment in plaintiff's favor was not required as a matter of law based on the jury's findings of fact, the trial court properly denied plaintiff's motion for JNOV. *Hecht*, 499 Mich at 604.

Next, plaintiff also argues that this Court should grant JNOV in its favor with respect to Mervie. Plaintiff readily admits on appeal that it did not raise this issue before the trial court.

Thus, this issue is not preserved for appeal and we decline to consider it. *Elahham v Al-Jabban*, 319 Mich App 112, 120; 899 NW2d 768 (2017).

## VI. CONCLUSION

We affirm the trial court's orders denying summary disposition and JNOV, vacate the jury's verdict with respect to the first two questions regarding Mervie, Hill, and Dixon, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro