*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY K. SUTTON, also known as MARY K.
HAMMER,

UNPUBLISHED
June 25, 2020

Plaintiff-Appellee,

v

No. 347143
Oakland Circuit Court
Family Division

JAMES E. SUTTON,

LC No. 2012-801407-DO

Defendant-Appellant.

Before: TUKEL, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Defendant appeals, by delayed leave granted, the trial court order requiring him to pay $2,000 per month in modifiable spousal support to plaintiff. We affirm.

Plaintiff and defendant were married in 1990 and divorced in 2013. They had one adult son at the time of their divorce. The parties' consent judgment of divorce provided, among other things, that defendant would pay plaintiff modifiable spousal support in the amount of $3,200 per month. At the time the judgment was entered, defendant was employed full-time at General Motors (GM) and earned a salary of over $100,000 per year.

In August 2016, defendant moved to modify the spousal support award, asserting that he had recently undergone back surgery and was no longer earning his GM salary, but was instead receiving disability as his income. After the parties engaged in mediation, the trial court ultimately entered a consent order modifying the judgment of divorce to reduce defendant's monthly spousal support obligation to $2,500 per month. The modification was based upon plaintiff's imputed income of $18,000 per year and defendant's income of $91,000 per year.

In November 2017, defendant again moved to modify the spousal support provision in the consent judgment of divorce. Defendant asserted that he suffered severe medical issues and had been terminated from his employment such that his income was no longer $91,000. The trial court conducted an evidentiary hearing, after which it entered an order modifying defendant's monthly

-1-

spousal support obligation to $2,000. This Court thereafter granted defendant's delayed application for leave to appeal.

On appeal, defendant claims that the trial court clearly erred in its spousal support modification because it considered information outside the record and speculative future events, and was unfair in its evaluation of the evidence presented. We disagree.

This Court reviews the trial court's factual findings relating to the award or modification of spousal support for clear error. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). "A finding is clearly erroneous if the appellate court is left with a definite and firm conviction that a mistake has been made." *Id.* at 654-655. When a trial court's findings are not clearly erroneous, we must then decide whether the dispositional ruling was fair and equitable in light of the facts. *Id.* at 655. We review an ultimate spousal support award for an abuse of discretion, which occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012).

The goal "in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Id*. at 26. A spousal support award can be modified on the basis of a showing of new facts or changed circumstances. *Thornton v Thornton*, 277 Mich App 453, 459; 746 NW2d 627 (2007). MCL 552.28 specifically provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17.1 the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

The party moving for modification has the burden of showing such new facts or changed circumstances. *Ackerman v Ackerman*, 197 Mich App 300, 301; 495 NW2d 173 (1992).

Defendant here moved for modification of spousal support due to an asserted loss of employment and thus a significant loss of income. At the evidentiary hearing on defendant's motion, defendant testified that he is 64 years old and was last employed in October 2017. He testified that he had previously been employed at GM, but had been on disability for all of 2016 due to major surgeries. He tried to go back to work in early 2017, but was thereafter hospitalized a couple of times and underwent surgery. Defendant testified that he was terminated in October 2017 for non-performance. Defendant testified that he is not currently suing GM, although he did speak to an attorney about the possibility several months back. Defendant stated that he will be leaving it up to the attorney to determine whether to sue. Defendant testified that GM offered him a severance package, but that he had to accept it by a certain date and that he was in the hospital when the expiration date occurred such that he was unable/did not accept the package. The severance agreement consisted of the payment of approximately two months of his salary (subject to applicable taxes), with a requirement that he also release GM from any current or potential liability.

Defendant testified that in 2017, when the parties entered into a consent agreement to modify his spousal support obligation, he had been earning approximately $90,000 per year. He testified that since the entry of that modification order, he had been in the hospital for several health issues, the most significant of which was bronchiectasis, which he explained was a lung disease. Defendant testified that he is still treating for bronchiectasis which has seriously affected his immune system. He is exhausted most of the time and sleeps "extraordinary amounts." According to defendant, he undergoes breathing treatments and takes 20 medications.

With respect to income, assets, and bills, defendant testified that he was recently granted social security disability in the amount of $2,614 per month, which is now his only income. Defendant testified that he and plaintiff divided all pensions and retirement accounts equally upon their divorce through the entry of five Qualified Domestic Relations Orders (QDRO's). Defendant expects to begin receiving approximately $500 per month from EDS and Boeing pensions and currently has approximately $300,000 in a 401(k) account that he has not drawn upon. He has $4,500 in combined checking and savings accounts.

Defendant does not own a home but instead rents a house in Royal Oak with a partner. He also no longer owns a vehicle, but borrows and drives one of his live-in partner's vehicles and pays around $50 monthly for gas. He pays $775 per month in rent, $400 per month in utilities, $80 per month for his cell phone, approximately $400 per month for groceries, $700 per month for plaintiff's insurance coverage, an average of $400 per month for prescriptions, and perhaps $200 monthly on entertainment and other miscellaneous items. He has also paid a couple of thousand dollars per year for their son's college and pays approximately $300 per month for their son's car insurance, cell phone bill, and for his school incidental needs. Defendant has no debt and was able to pay his attorney from his income tax refund.

Plaintiff testified that she has a Bachelor's degree in animal science and worked full time prior to meeting defendant, but last worked full-time in her field when she was approximately 40 years old. Now 65 years old, she receives $1,081 per month in social security, earns $50 per week providing caregiving, and makes between $20 and $100 per week selling flowers during the summer months. Plaintiff stated that she receives $184 per month from a Hewlett Packard 401(k) and expects to receive approximately $100 per month from the Boeing pension.

Plaintiff received the parties' marital home in the divorce and defendant received an $8,000 Genworth annuity and plaintiff's IRA, worth $26,000, as payment for his share of the home. She still lives in the marital home that she was awarded in the divorce and which she refinanced with a mortgage in her name.[1] She has approximately $60,000 in equity in the home.

Plaintiff testified that she was awarded a vehicle in the divorce but no longer has it; she purchased a newer vehicle and has a car payment of $175 per month as well as an insurance payment of $147 per month. She incurs a cost of approximately $200 per month in gasoline. She has approximately $1,700.00 in a checking account, and $131,000 in a Merrill Lynch account. Plaintiff testified that she gave the parties' adult son $2,000 for tuition for the 2018 school year.

---

[1] Bank documents indicate that her monthly mortgage payment is $939.55.

Plaintiff testified that defendant had health issues during the marriage and that after the divorce, he had back surgery, which he suffered complications from, and that his health has been declining over the years from diabetes. She conceded that defendant's health is failing. Plaintiff testified that she did not think defendant was being completely truthful about his income because she did not understand how he could survive on his claimed limited income unless everything was being paid for by someone else.

At the conclusion of the evidentiary hearing, the trial court required defendant to submit his 2017 W-2's. It also required both parties to provide their bank statements from the past two years and their income tax returns for the past three years. After its review of the documentary evidence, the trial issued a written opinion and order reducing defendant's monthly spousal support obligation to $2,000 per month. We find no abuse of discretion in the trial court's award.

The trial court generally opined, based on the record evidence, that there was a change of circumstances that warranted a modification of the spousal support order. It then noted that to determine the appropriate amount of spousal support, it was to consider factors set out in *Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991), as follows:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, and (12) general principles of equity. In addition, the court may consider a party's fault in causing the divorce. [*Id*., internal citations omitted]

The trial court specifically and explicitly considered each factor in the written record.

The trial court noted that plaintiff's testimony and submitted documents indicated that the majority of her income comes from spousal support and that she receives a lesser amount of social security benefits than defendant. It noted that defendant resides with a partner and shares living expenses with her (having done so for five years), as well as being provided with a car. Plaintiff, on the other hand, lives alone and is heavily dependent upon the spousal support for her 2017 income of $32,741.

Defendant challenges the trial court's reliance on documents submitted after the evidentiary hearing because they were not served upon him nor made part of the record such that he had no opportunity to cross-examine plaintiff about them. However, defendant did not raise this issue before the trial court. Defendant was well aware that the trial court required both parties to submit documents *to the court* after the evidentiary hearing. The trial court, in fact, issued an order on June 11, 2018, specifically requiring the parties to submit documentation "to the court within two weeks of this order." Defendant made no request that the documents also be provided

-4-

to him or that further testimony be allowed after submission of the documents.[2]  Therefore, this issue is not preserved for appeal, and we decline to consider it.  *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 718; 930 NW2d 416 (2019).[3]

Defendant next asserts that the trial court was not even-handed in its treatment of income and savings to the parties.  Specifically, defendant states that while the trial court found that defendant had $300,000 in retirement savings that he had not drawn upon, it failed to acknowledge that plaintiff was not taking all of her available pension benefits, nor was she drawing on her share of the retirement accounts.

The trial court did note that defendant has $300,000 in a retirement account that he has not yet drawn from.  It also heard and acknowledged plaintiff's testimony that she had approximately $131,000 in an account (presumably her share of the parties' retirement accounts) and resided in the marital home, which had approximately $60,000 in equity.  Plaintiff was also questioned regarding pension benefits and the only pension benefit she indicated that she expected to receive (but was not yet receiving) is a $100 per month benefit from Boeing.  Defendant has provided no indication that there were additional pension benefits that plaintiff could be collecting but was not.

The trial court also clearly acknowledged defendant's failing health (and plaintiff's good health) and his reduced income in fashioning an appropriate spousal support award.  The trial court indicated that defendant was in poor health and was unlikely to return to full time work, but that plaintiff also had little chance of full-time work given her being outside of the workforce for 25 years and now being 65 years of age.  If, as defendant asserts, the court should have considered the $100 per month that plaintiff could, but was not yet receiving into its equity consideration, the amount would add up to only $1,200 more per year to plaintiff's income.  Adding that to plaintiff's admittedly unreported income of $2,400 per year for caregiving services would equal an additional $3,600 in yearly income to plaintiff's $32,741 reported income.  The minimal $3,600 per year in income would likely not drastically affect plaintiff's ability to meet her needs for the foreseeable future.

The trial court focused significantly on factor (12), general principles of equity, in reaching its decision.  The court indicated that neither party spends excessively, but that plaintiff is just meeting her minimum needs, while defendant spends substantially more money dining out and had recently made an $800 purchase while unemployed and receiving disability.  The trial court noted that plaintiff's bank account balance in 2018 averaged between $680 to $1,700, whereas defendant's bank account balance for that year averaged between $1,758 to $4,510.73.  Moreover,

---

[2] There is also no indication that defendant served his documentation on plaintiff.

[3] Defendant asserts that the lack of ability to cross-examine plaintiff regarding her income tax returns is troublesome given her testimony that she does not declare all of her income for income tax purposes.  Plaintiff specifically admitted, however, that she did not declare the $50 per week ($200 per month or $2,400 per year) she earned for caregiving services.  Defendant could have, but did not, question plaintiff about any other potentially unreported income and plaintiff did not testify to any other unreported income.

defendant was not having difficulty meeting his basic needs, even being on a much lower income and with poor health while plaintiff, without spousal support, would have a monthly income of just $1,565.[4] The trial court thus found that reducing the spousal support award to lower than $2,000 per month would inequitably impoverish her and create a significant hardship on her ability to meet her financial needs. We find no error in these factual findings.

The trial court did, as defendant points out, speculatively state in its analysis that there was a real possibility that defendant would be suing his former employer and, if so, may receive a settlement or award. However, this was merely one sentence in the trial court's thorough and thoughtful analysis. Moreover, the trial court's statement was not without foundation, given that defendant explained how he came to be fired from GM, stated that he had consulted with an attorney over suing his former employer, and indicated that he had not accepted the offered severance package not only because he was in the hospital when it expired, but also because it contained a release of liability that he did not want to sign.

"The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003). Overall, the trial court's statements and findings were supported by the evidence, and were not unfair or inequitable. The trial court thus did not abuse its discretion in finding $2,000 per month, still modifiable, a proper spousal support award.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Jane M. Beckering

---

[4] Presumably $1,865 per month if the trial court did not consider the $100 per month Boeing pension benefit and plaintiff's $200 per month caregiving income in its calculations.