*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL PETRA BARTOSIEWICZ,

        Plaintiff-Appellant,

and

ADAM BOTA,

        Plaintiff,

V

A2Q, LLC, doing business as WESTSIDE
BARBECUE, MATTEO ALESSANDRO MELOSI,
and SANJIT E. JAMES JAYAKAR,

        Defendants-Appellees.

UNPUBLISHED
March 17, 2020

Nos. 345942; 345944
Washtenaw Circuit Court
LC No. 17-000428-CB

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiff Carol Petra Bartosiewicz (Bartosiewicz) appeals by right two opinions and orders of the trial court granting summary disposition in favor of defendants A2Q, LLC, doing business as Westside Barbecue (A2Q), Matteo Alessandro Melosi (Melosi), and Sanjit E. James Jayakar (Jayakar) under MCR 2.116(C)(5), (C)(8), and (C)(10).[2] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[1] *Bartosiewicz v A2Q, LLC*, unpublished order of the Court of Appeals, entered October 24, 2018 (Docket Nos. 345942 and 345944).

[2] The trial court also granted defendants' motions for summary disposition with respect to plaintiff Adam Bota's (Bota) claims. Bota is not a party to these appeals.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Bartosiewicz met Melosi in September 2015, when Melosi was selling barbecued food at a farmer's market in Ann Arbor, and the two developed a friendship. On October 5, 2015, Melosi registered A2Q as a limited liability company (LLC) with the Department of Licensing and Regulatory Affairs (LARA). In March 2016, Melosi asked Bartosiewicz to help him prepare a business plan for A2Q. The next month, Melosi told Bartosiewicz that he was going to obtain monetary support for A2Q from his friend Jayakar, so that he could obtain a lease for a brick-and-mortar location for the business. Shortly thereafter, Melosi told Bartosiewicz that Jayakar had backed out of the deal, and Melosi asked Bartosiewicz for a loan.

According to Bartosiewicz, she agreed to loan Melosi $20,000 in exchange for (a) a 20% ownership interest in A2Q, and (b) the position of A2Q's chief financial officer (CFO); the resulting loan required A2Q to repay the loan at interest, personally guaranteed by Melosi. Bartosiewicz paid Melosi the money in three separate installments, all during the month of April 2016. For each payment, Bartosiewicz and Melosi signed a separate document, entitled "Personal Loan Contract," that reflected the terms of the loan. None of these documents mentioned A2Q or any ownership interest in A2Q. Over the next six months, Bartosiewicz loaned additional money to Melosi for the business, and she and Melosi again signed similar documents entitled "Personal Loan Contract," again making no mention of A2Q During that time, Bartosiewicz also assisted Melosi, without compensation, to prepare the premises for A2Q's business operations.

On July 28, 2016, Bartosiewicz prepared a document entitled "Principles for new agreement," which stated that she had "given" Melosi $35,000 as of that date,[3] and that she was "wiring [the] final $3,000.00 today to [the] A2QLLC account." The document stated that Bartosiewicz would forgive $20,000 of the debt "in exchange for 35% total share of the business," noting that she was "effectively purchasing an additional 15% since [she] already own[ed] 20%." Melosi was required to repay the remaining $15,000 over the course of 12 months beginning on September 1, 2016. The document also provided that late payments during any month would result in Bartosiewicz receiving an additional 1% ownership interest in the company. Additionally, she would receive back pay of $5,000 for her work for the company from May 2016 to August 2016, and she would begin receiving a salary of $2,690 per month beginning on September 1, 2016. The document ends with the following statement: "We'll draft new loan contract/operating agreement . . . to reflect all of this." Both Bartosiewicz and Melosi signed the document. The document did not mention Jayakar.

In September 2016, Bartosiewicz discovered that A2Q's federal tax return for 2015 listed Jayakar as an owner of the business. When confronted with this information, Melosi reassured Bartosiewicz that Jayakar was not actually an owner of the business and had provided money as a gift for Melosi to start his business and to form A2Q. Melosi stated that he only listed Jayakar on the tax return so that Jayakar could claim a business loss on his own taxes. Bartosiewicz had A2Q's accountant, Alexandria Goldsmith, e-mail Jayakar to ask about the situation and to request

---

[3] It appears from the record that the personal loan contracts up to that point in time reflected a total amount loaned by Bartosiewicz of $25,000, and the record does not reflect any agreement regarding an additional $10,000.

that he sign a document disclaiming his interest in the business. Jayakar responded by stating that the money was not a gift, and that he would be willing to consider the money either an "[e]qual partnership as offered and discussed with [Melosi]," or a "[l]oan guaranteed by proceeds from eminent [sic] inheritance from [Melosi's] parents with agreement from trustee."

In November 2016, Melosi and Bartosiewicz signed a second document entitled "Principles for new agreement" that stated that it was an update to the original document bearing that title. This document provided that Bartosiewicz would receive a 40% interest in A2Q in exchange for the forgiveness of $25,000 of loan debt, and would receive an additional 1% interest each time Melosi was late on a scheduled loan payment. Beginning in October 2016, Bartosiewicz and Melosi agreed that they would receive salary payments based on their 40%/60% ownership ratio, but with a guaranteed minimum of $3,300 per month for Bartosiewicz.

Concerning Jayakar's belief that he either owned 50% of A2Q or was the holder of a debt secured by Melosi's inheritance, Melosi told Bartosiewicz that Jayakar had only responded in the manner he did because he had been afraid after being contacted by Bartosiewicz and Goldsmith. Melosi asked Bartosiewicz to let him handle the future interactions with Jayakar. Bartosiewicz refused to do so and instead scheduled a meeting among all four individuals. Before that meeting occurred, Bartosiewicz recorded a meeting that she held with Melosi. During that meeting, Melosi repeatedly assured Bartosiewicz that Jayakar would accept a promissory note for repayment of the money he had given to Melosi and that he would then voluntarily disclaim his interest in the business.

The meeting among Jayakar, Bartosiewicz, Melosi, and Goldsmith occurred on December 10, 2016. During that meeting, Jayakar acknowledged that Melosi and Bartosiewicz were working together and that he did not want to interfere with their business relationship. However, Jayakar also stated that he considered himself to be a 50% owner of A2Q, an interest that he intended to retain in order to secure the money he had provided to Melosi. After the meeting, Jayakar sent a text message to Bartosiewicz telling her that her "interest" in the business would be "protected," and that he was happy that she was in control of the business. Shortly thereafter, however, Jayakar ended all communication with Bartosiewicz and requested an accounting of A2Q's business records.

In 2017, Bartosiewicz issued five checks from A2Q's bank account to herself. Each check was in the amount of $3,300, and each referenced her salary for a different month between January 2017 and May 2017. In May 2017, she filed suit against defendants, in part seeking a declaratory judgment that she held an ownership interest in A2Q, for an accounting, and for the dissolution of A2Q under the Michigan Limited Liability Company Act (MLLCA), MCL 450.4101 *et seq*. The complaint also asserted claims against Melosi for fraud and misrepresentation, breach of duty of care, breach of duty of loyalty, improper distributions, and conversion, and against Melosi and Jayakar for breach of promissory notes, concert of action, and civil conspiracy. The trial court granted defendant's motion for summary disposition and dismissed Bartosiewicz's original complaint; however, it permitted her to file an amended complaint.

Bartosiewicz filed an amended complaint in November 2017, asserting claims for a declaratory judgment, accounting, breach of fiduciary duty, embezzlement, fraudulent misrepresentation or silent fraud, civil conspiracy, concert of action, conversion, breach of

contract, quantum meruit/unjust enrichment, and claim and delivery related to equipment[4] she had allegedly purchased for A2Q with her own funds.[5]

Once again, in lieu of answering the amended complaint, defendants moved for summary disposition.[6] The trial court granted the motions, holding in part that Bartosiewicz did not have an ownership interest in the business under the MLLCA, and thus did not have standing to bring certain of her claims.[7] The trial court also held that Bartosiewicz had not stated a claim on which relief could be granted in relation to her remaining claims. These appeals followed.

## II. STANDING

Bartosiewicz argues that the trial court erred when it held that she lacked standing to bring claims for an accounting, breach of fiduciary duty, and embezzlement. We disagree. She also argues that the trial court erred when it held that she also lacked standing to bring her claim for conversion. In that respect, we agree.[8]

"We review de novo a circuit court's summary disposition decision." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). "This Court has viewed a claim that a plaintiff lacks standing as a motion under MCR 2.116(C)(5), i.e., that the plaintiff lacks the legal capacity to sue." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v City of Pontiac No 2*, 309 Mich App 611, 619; 873 NW2d 783 (2015). "In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties." *Aichele v Hodge*, 259 Mich App 146, 152; 673 NW2d 452 (2003) (quotation marks and citations omitted). Summary disposition under subrule (C)(5) is appropriate where "the movant [is] entitled to judgment as a matter of law because the party asserting the claim

---

[4] The equipment was comprised of two smokers and warming box.

[5] We will not in this summary of the claims endeavor to detail which claims were asserted against which defendants.

[6] Melosi and A2Q jointly filed one summary disposition motion; Jayakar filed a separate motion. The motions were heard together, but resulted in the trial court's issuance of two separate opinions and orders.

[7] The trial court's opinion and order granting the motion for summary disposition filed by Melosi and A2Q concludes that Bartosiewicz lacked standing with respect to her claims for an accounting, declaratory judgment, breach of fiduciary duty, embezzlement, and conversion. The opinion and order granting the motion for summary disposition filed by Jayakar concludes that Bartosiewicz lacked standing with respect to her claims for an accounting, breach of fiduciary duty, and embezzlement.

[8] In addition, the trial court erred to the extent it granted summary disposition on Bartosiewicz's declaratory judgment claim for lack of standing. For the reasons stated in this opinion, we agree with the trial court that Bartosiewicz had no ownership interest in A2Q, and we therefore affirm that ruling. However, the result of that determination is that her declaratory judgment claim fails on its merits, not for lack of standing.

[does] not have legal capacity to sue." *Stevenson v Reese*, 239 Mich App 513, 516; 609 NW2d 195 (2000).

"Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). "Whether a party has standing is reviewed de novo as a question of law." *Wilmington Savings Fund Society, FBS v Clare*, 323 Mich App 678, 684; 919 NW2d 420 (2018).

This Court recently restated the legal principles behind the doctrine of standing in *Grayling v Berry*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 344297); slip op at 14:

> "The concept of standing represents a party's interest in the outcome of litigation that ensures sincere and vigorous advocacy." *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190 (1993). A party must demonstrate more than just "a commitment to vigorous advocacy." *Id.* It must also show that it has a substantial interest that "will be detrimentally affected in a manner different from the citizenry at large." *Id.* (citation omitted). That is, the plaintiff must demonstrate an actual injury or likely chance of immediate injury that is different from that of the general public. *Kuhn v Secretary of State*, 228 Mich App 319, 333; 579 NW2d 101 (1998). The plaintiff's suit is generally precluded if its interests are no different than those of the public. *Id.*

The parties agree, as do we, that in order for Bartosiewicz to have standing to bring her accounting, breach of fiduciary duty, and embezzlement claims, she must be or have been a member of A2Q, because those claims involve rights belonging to A2Q or its members, not the general public. *Grayling*, ___ Mich App at ___; slip op at 14, citing *Kuhn*, 228 Mich App at 333.

Under the MLLCA, the process by which someone can become a member of an LLC depends first on timing. MCL 450.4501. The first relevant time period is during "the formation of the [LLC] . . . ." MCL 450.4501(1). It is undisputed that A2Q was formed on October 5, 2015, about six months before Bartosiewicz alleges that she acquired her first ownership interest in the business. Therefore, MCL 450.4501(1) does not apply to Bartosiewicz. The record appears to reflect, however, that Jayakar's membership interest in A2Q was obtained at the formation of A2Q. Bartosiewicz does not dispute that Jayakar provided Melosi with start-up funding for A2Q with the apparent understanding that Jayakar would receive an ownership interest in the business. Further, it is not disputed that Jayakar's "status as a member [was] reflected in the . . . tax filings" of A2Q. MCL 450.4501(1)(b)(*ii*).

The MLLCA also addresses the manner in which "[a] person may be admitted as a member of [an LLC] after the formation of the [LLC] . . . ." MCL 450.4501(2). Under MCL 450.4501(2), Bartosiewicz could have become a member "by complying with the provisions of an operating agreement prescribing the requirements for admission or, in the absence of provisions prescribing the requirements for admission in an operating agreement, upon the unanimous vote of the members entitled to vote." MCL 450.4501(2)(a). It is not disputed in this case that A2Q did not have an operating agreement. Therefore, under MCL 450.4501(2)(a), Bartosiewicz could only be admitted as a member of A2Q if there was a "unanimous vote of the members entitled to vote." According to MCL 450.4502(1)(b), "each member of [an LLC] has 1 vote." It is not disputed that

Melosi was a member of A2Q, and that under MCL 450.4501(1)(b)(*ii*), Jayakar was also a member of A2Q at the time that Bartosiewicz alleges she became a member. Consequently, in order to have legally obtained a membership interest in A2Q at that time, both Melosi and Jayakar would have had to have voted in favor of it. MCL 450.4501(2)(a).

The MLLCA defines a vote as "an affirmative vote, approval, or consent." MCL 450.4102(v). It is not disputed in this case that there was never a formal vote regarding the admission of Bartosiewicz as a member of A2Q. But Bartosiewicz contends that there is a question of fact regarding whether Jayakar voted in favor of her admission as a member of A2Q during a December 10, 2016 meeting. During the meeting, Jayakar never specifically stated that he "approved" or "consented" to Bartosiewicz being a member of the business. *Id*. Instead, in general terms, Jayakar expressed his approval that Bartosiewicz and Melosi were working together, that he was happy that Bartosiewicz was in control of the company's finances, and that he did not want to interfere with their working relationship. In a text message following that meeting, Jayakar stated to Bartosiewicz that her "interest" would be "protected" and that he was happy that she was in control of the business.

MCL 450.4102(v) does not permit passive approval or consent to admit a new member to an LLC; instead, the statute specifically states that such approval or consent must be "affirmative." Our Supreme Court has stated that " '[a]ffirmative' is defined as '[t]hat which declares positively; that which avers a fact to be true; that which establishes . . . .' " *People v Lukity*, 460 Mich 484, 504 n 1; 596 NW2d 607 (1999) (BRICKLEY, J., concurring), quoting *Black's Law Dictionary* (6th ed) at 59. Viewing the facts of the record in the light most favorable to Bartosiewicz, she has not shown that Jayakar "declare[d] positively" or made "an effort" to "[g]iv[e] assent" to Bartosiewicz being admitted as a member of A2Q. *Lukity*, 460 Mich at 504 n 1; *Black's Law Dictionary* (11th ed). Although Jayakar stated that he approved of her being in control of the business, the MLLCA contemplates that non-member managers may fill important roles in an LLC. See, e.g., MCL 450.4402. Therefore, Jayakar's approval of Bartosiewicz running the business does not necessarily correlate to an indication that he approved of her membership in A2Q. Absent any evidence that Jayakar affirmatively approved of Bartosiewicz being admitted as a member of A2Q, Bartosiewicz cannot possibly fulfill the MLLCA's requirement for her to have become a member. MCL 450.4501(2)(a). Accordingly, the trial court did not err when it held that Bartosiewicz was not a member A2Q. *Id*. Bartosiewicz does not deny that absent membership in A2Q, she lacks standing to bring claims for an accounting, breach of fiduciary duty, and embezzlement. Consequently, the trial court appropriately granted summary disposition in favor of defendants on those claims under MCR 2.116(C)(5).[9] *Stevenson*, 239 Mich App at 516.

---

[9] Bartosiewicz also argues that this Court should conclude otherwise because the trial court failed to make an adverse inference against Melosi when he refused to answer interrogatories by exercising his Fifth Amendment privilege against self-incrimination. It is true that, under the Fifth Amendment, the "privilege against self-incrimination . . . permits a person . . . not to answer official questions put to him in any other proceeding . . . where the answers might incriminate him in future criminal proceedings." *Phillips v Deihm*, 213 Mich App 389, 399-400; 541 NW2d 566 (1995), citing *Allen v Illinois*, 478 US 364, 368; 106 S Ct 2988; 92 L Ed 2d 296 (1986). Further,

We agree, however, that the trial court erred when it held that her lack of membership in A2Q also resulted in a lack of standing to assert her conversion claim. As stated by our Supreme Court, "the scope of a common-law conversion is now well-settled in Michigan law as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015) (quotation marks and citations omitted). A statutory claim of conversion requires similar proof—that one party wrongfully "conver[ted] property to [his] own use." MCL 600.2919a(1)(a).

Bartosiewicz's conversion claim is based on her allegation that she personally owned two smokers and a warming box because she had purchased them with her own money, that she asked for those items to be returned, and that her request was denied by Melosi and Jayakar. Bartosiewicz also alleged that Melosi and Jayakar were still using that equipment for A2Q's barbecue business. This claim did not require a membership interest in A2Q, and the trial court erred by holding that she lacked standing to pursue this claim. See *Grayling*, ___ Mich App at ___; slip op at 14, citing *Kuhn*, 228 Mich App at 333.

To summarize, the trial court properly summarily disposed of Bartosiewicz's accounting, breach of fiduciary duty, and embezzlement claims under MCR 2.116(C)(5), but erred in doing so with respect to Bartosiewicz's conversion claim.

## III. TORT CLAIMS

Bartosiewicz also argues that the trial court improperly granted summary disposition in favor of defendants under MCR 2.116(C)(8) with respect to her claims of fraud, concert of action, civil conspiracy, conversion, and claim and delivery. We agree in part and disagree in part.

"We review de novo a circuit court's summary disposition decision." *Packowski*, 289 Mich App at 138. "A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted." *Dalley*, 287 Mich App at 304 (quotation marks and brackets omitted). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Adair*, 470 Mich at 119, quoting *Maiden*, 461 Mich at 119. "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Dalley*, 287 Mich App at 305 (quotation marks and citation

---

Bartosiewicz is correct that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them . . . ." *Phillips*, 213 Mich App at 400, citing *Baxter v Palmigiano*, 425 US 308, 318; 96 S Ct 1551; 47 L Ed 2d 810 (1976). However, an adverse inference against Melosi, even if appropriate under the circumstances, would not permit an inference that Jayakar had affirmatively approved her being admitted as a member of A2Q. The trial court's failure to draw an adverse inference against Melosi was irrelevant to its determination of Bartosiewicz's standing to bring accounting, breach of fiduciary duty, and embezzlement claims. *Id*.

omitted).  "Questions of statutory interpretation are also reviewed de novo."  *Rowland*, 477 Mich at 202.

## A.  FRAUD, CIVIL CONSPIRACY, AND CONCERT OF ACTION

Bartosiewicz argues that the trial court erred by holding that she failed to plead claims of fraud, concert of action, and civil conspiracy.  We disagree.  "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means."  *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003) (quotation marks and citation omitted), aff'd 472 Mich 91 (2005).  "However, a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort."  *Id*. (quotation marks and citation omitted).  "In addition, to establish a concert-of-action claim, a plaintiff must prove that all defendants acted tortiously pursuant to a common design that caused harm to the plaintiff."  *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013) (quotation marks and citation omitted).  As with the civil-conspiracy claim, in a concert-of-action claim "the plaintiff must establish some underlying tortious conduct."  *Id*.  In the present case, the "underlying" tort alleged by Bartosiewicz was fraud.  Therefore, we must first address Bartosiewicz's fraud claim.

In *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018) (alterations in original), we recently reiterated the elements of fraud claims:

> Actionable fraud, also known as fraudulent misrepresentation, *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), requires that
>
> > (1) the [party] made a material representation; (2) the representation was false; (3) when the [party] made the representation, the [party] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the [party] made the representation with the intention that the [opposing party] would act upon it; (5) the [opposing party] acted in reliance upon it; and (6) the [opposing party] suffered damage.  [*M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (quotation marks and citation omitted).]
>
> Silent fraud, also known as fraudulent concealment, acknowledges that "suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud."  *Id*. at 28-29 (quotation marks and citations omitted).  But in order for silent fraud to be actionable, the party having a legal or equitable duty to disclose must have concealed the material fact with an intent to defraud.  *Id*.; *Titan*, 491 Mich at 557.

"Fraud claims must be pleaded with particularity, addressing each element of the tort."  *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 229-230; 859 NW2d 723 (2014).

Defendants' argument, on which the trial court relied in granting summary disposition with respect to Bartosiewicz's fraud claim, was that reliance on the alleged fraudulent misrepresentations or concealment was not reasonable in light of the fact that Bartosiewicz had

been aware of Jayakar's interest in the business since the outset. *Maurer*, 325 Mich App at 695. In any claim of fraud, the alleged victim of the fraudulent representation or concealment "must also show that any reliance on defendant[s'] representations was reasonable." *Foreman v Foreman*, 266 Mich App 132, 141-142; 701 NW2d 167 (2005). Proof of reasonable reliance is required "[b]ecause fraud cannot be perpetrated upon one who has full knowledge to the contrary of a representation . . . ." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (quotation marks and citation omitted).

After reviewing the record and accepting all of Bartosiewicz's well-pleaded allegations as true, we conclude that Bartosiewicz properly pleaded a claim of fraud, at least in part. Her complaint alleges that, at the time Melosi first promised Bartosiewicz an ownership interest in A2Q, she was not aware of Jayakar's membership in the business, although she was aware that Jayakar was a person who had considered loaning Melosi money. While defendants are permitted to dispute that allegation, the trial court could not simply declare that Bartosiewicz had known about Jayakar's interest in the business in March or April 2016. In considering a motion for summary disposition under subrule (C)(8), the trial court was required to accept all of the well-pleaded allegations of Bartosiewicz's amended complaint as true. *Adair*, 470 Mich at 119. Bartosiewicz also pleaded the other elements of fraud, i.e., that: (1) Melosi represented to Bartosiewicz that he could give her an ownership interest in A2Q; (2) the representation was not true considering Jayakar's membership in A2Q; (3) Melosi either knew it was untrue—he knew Jayakar was listed as a member on the tax return—or had a reckless disregard for its veracity; (4) Melosi made the misrepresentation with the intent to have Bartosiewicz give money, time, and labor to the business; and (6) Bartosiewicz suffered damages in the form of a lost investment, interest in the business, wages she could have earned in her former profession, and agreeing to underpaid, and ultimately unpaid, labor.[10] *Maurer*, 325 Mich App at 695. We conclude that, with regard to the time period preceding Bartosiewicz's review of A2Q's tax returns, trial court erred by granting defendants' motions for summary disposition on the claim of fraud. *Adair*, 470 Mich at 119.

Regarding the subsequent time period, Bartosiewicz alleges in her complaint that she first saw the A2Q tax returns in September 2016, and that they showed Jayakar to be a partial owner of A2Q. As noted, under the MLLCA, this suffices to afford Jayakar membership status in A2Q. When Melosi was confronted with that information, he told Bartosiewicz that he had listed Jayakar on the tax return as a favor to Jayakar and insisted that Jayakar was not an owner of the business

---

[10] These allegations of damages by Bartosiewicz bely defendants' argument that she did not suffer damages from any alleged fraud because she was paid a salary for her work and had personal loan contracts entitling her to repayment of the money loaned to Melosi. First, as is clear from the record, Bartosiewicz was paid her salary only during certain months in 2017, and she pleaded that she provided labor to A2Q beginning in April 2016. Therefore, there remain approximately nine months during which Bartosiewicz allegedly did not receive payment for her work. Second, Bartosiewicz also pleaded that she agreed to the salary in question under the assumption that she also would be a partial owner of A2Q on the basis of fraudulent promises made by Melosi and Jayakar. Therefore, Bartosiewicz has pleaded a claim for damages caused by fraud over and above the alleged agreed-upon salary.

and that, if asked, Jayakar would willingly disclaim any interest in the business that he had inadvertently obtained by virtue of the tax returns. When Bartosiewicz had Goldsmith inquire with Jayakar, Jayakar replied that he either owned half of the business or that he had given a loan to Melosi secured by an interest in Melosi's trust. Bartosiewicz then met with Melosi again to discuss Jayakar's response, and Melosi again assured Bartosiewicz that Jayakar did not own a portion of the business, claiming that Jayakar had provided him with the money as a gift, and repeating his claim that Jayakar would be willing to state that he had no interest in A2Q as long as Bartosiewicz allowed Melosi to handle the interaction. At the meeting that eventually occurred, Jayakar clearly expressed that he did have an ownership interest in A2Q and would not disclaim that interest in return for a promise to repay from Melosi, but also indicated that it was good for Bartosiewicz to run the business, that he did not want to interfere with her working relationship with Melosi, and that he was happy that Bartosiewicz wanted to manage and expand the business. In a text message after the meeting, Jayakar told Bartosiewicz that her "interest" would be "protected." While, as discussed, those representations did not qualify as a membership vote, viewed in the light most favorable to Bartosiewicz, there is at least a question of fact regarding whether they were fraudulent misrepresentations. In sum, accepting the well-pleaded allegations of Bartosiewicz's amended complaint as true, she became aware of the tax returns in September 2016, but, due to subsequent statements made by both Melosi and Jayakar, there is genuine issue of material fact regarding whether Bartosiewicz's reliance on the alleged fraudulent misrepresentations was reasonable. While the tax returns legally established Jayakar's ownership interest in A2Q, his and Melosi's statements may have worked to reassure Bartosiewicz that she was still entitled to her ownership interest in the business. We conclude that summary disposition of Bartosiewicz's fraud claim from the time that she discovered the tax return until the time she filed the original complaint was not warranted. *Adair*, 470 Mich at 119; *Maurer*, 325 Mich App at 695.

We agree, however, that the trial court properly granted summary disposition with respect to Bartosiewicz's claim for fraud concerning events that took place after the original complaint was filed. Bartosiewicz alleges that during that time period she was defrauded into purchasing two smokers, a warming box, and a Chevrolet Silverado truck for the business. By the time she filed her complaint, though, she was well aware that Melosi and Jayakar did not consider her to be an owner of the business and that she needed their unanimous consent, under the MLLCA, to become one. While she may have believed that she would win her case on other grounds and obtain a judgment granting her an interest in the business, Bartosiewicz was no longer relying on alleged fraudulent misrepresentations of Jayakar and Melosi in deciding to purchase the equipment and vehicle in question. At that point, she was fully aware of the circumstances presented, and simply decided that it was in the best interests of the business, which she hoped she might be determined to own in part, to purchase those items. "[F]raud cannot be perpetrated upon one who has full knowledge to the contrary of a representation . . . ." *Cooper*, 481 Mich at 414 (quotation marks and citation omitted). Therefore, the trial court properly granted summary disposition in favor of defendants on Bartosiewicz's fraud claims that accrued after she filed the original complaint. *Id.*; *Adair*, 470 Mich at 119; *Maurer*, 325 Mich App at 695.

As stated, Bartosiewicz's civil-conspiracy and concert-of-action claims relied on her ability to plead a claim of fraud as an underlying tort. *Urbain*, 301 Mich App at 132; *Advocacy Org*, 257 Mich App at 384. Considering that Bartosiewicz did plead a claim of fraud against both Melosi and Jayakar, that requirement for her concert-of-action and civil-conspiracy claims was

also met, and the trial court erred by granting summary disposition on those claims to the extent it based that ruling on having granted summary disposition on the underlying fraud claim.

Moreover, Bartosiewicz's complaint adequately alleged claims for civil conspiracy and concerted action. A civil conspiracy claim requires a plaintiff to plead a "combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Id*. (quotation marks and citation omitted). Similarly, a concert of action claim requires a plaintiff to plead that two or more defendants "acted tortiously pursuant to a common design that caused harm to" the plaintiff. *Urbain*, 301 Mich App at 132 (quotation marks and citation omitted).

Here, Bartosiewicz pleaded that Jayakar and Melosi worked together to make fraudulent misrepresentations concerning her interest in A2Q, and to conceal Jayakar's interest. Taking her well-pleaded allegations as true, she established a genuine issue of material fact regarding whether Jayakar and Melosi had worked together under a common scheme to perpetrate a fraud against Bartosiewicz. *Id*.; see also *Advocacy Org*, 257 Mich App at 384. Consequently, the trial court erred by granting summary disposition in favor of defendants on Bartosiewicz's civil conspiracy and concert of action claims under MCR 2.116(C)(8). *Adair*, 470 Mich at 119.

## B. CONVERSION AND CLAIM AND DELIVERY

Bartosiewicz argues that the trial court erred by granting summary disposition in favor of defendants on her conversion and claim and delivery claims under MCR 2.116(C)(8). We agree.

"Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citation omitted). Again, "the scope of a common-law conversion is now well-settled in Michigan law as any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines*, 497 Mich at 351-352. A statutory claim of conversion requires proof that one party wrongfully "conver[ted] property to [his] own use." MCL 600.2919a(1)(a).

Under MCL 600.2920(1), "[a] civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention . . . ." This statute applies only to tangible property." *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 714; 583 NW2d 232 (1998).

In Bartosiewicz's amended complaint, she alleged that she purchased two smokers and a warming box with her own personal funds. When she was ousted from the business, she requested the return of that equipment from Melosi and Jayakar. They refused and asserted that the equipment belonged to A2Q. While defendants may dispute Bartosiewicz's claim that she personally owned the equipment, the trial court was required to accept as true all of the well-pleaded allegations in Bartosiewicz's amended complaint. *Adair*, 470 Mich at 119.

Accepting all of Bartosiewicz's well-pleaded allegations as true means, at this juncture of the case, that she purchased the equipment with her own money, was not reimbursed, and that defendants have kept that equipment despite requests for its return. Conversion can be "committed

by . . . refusing to surrender a chattel on demand." *Aroma Wines*, 497 Mich at 352 (quotation marks and citation omitted). Moreover, as noted, a claim under MCL 600.2920(1) can be maintained by proving that "any goods or chattels . . . have been unlawfully taken or unlawfully detained . . . ." Bartosiewicz has adequately pleaded a claim of conversion and claim and delivery. *Id*.; *Magley*, 325 Mich App at 314.

In conclusion, the trial court properly granted summary disposition under MCR 2.116(C)(8) on Bartosiewicz's fraud claim insofar as it related to events that occurred after she filed the original complaint, but erred in otherwise granting summary disposition on that claim, as well as by granting summary disposition on her claims of civil conspiracy, concert of action, conversion, and claim and delivery.

## IV. BREACH OF CONTRACT

Bartosiewicz also argues that the trial court improperly granted Melosi's motion for summary disposition on her breach-of-contract claim under MCR 2.116(C)(8). We agree.

In asserting a claim for breach of contract, a party "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). This Court, in *Law Offices of Jeffrey Sherbow PC v Fieger & Fieger PC*, 326 Mich App 684, 695; 930 NW2d 416 (2019), recently restated the law regarding the requirements for contract formation:

> "[A] contract is an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties . . . ." *In re Mardigian Estate*, 312 Mich App 553, 562; 879 NW2d 313 (2015) (quotation marks and citation omitted), aff'd 502 Mich 154 (2018). "Before a contract can be completed, there must be an offer and acceptance." *Clark v Al-Amin*, 309 Mich App 387, 394; 872 NW2d 730 (2015) (quotation marks and citation omitted). "In order for there to be an enforceable agreement between the parties, there must be 'mutual assent' to be bound—that is, the parties must have a 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014).

> "Parties are free to contract as they see fit, and courts must enforce contracts as written unless they are in violation of law or public policy." *Edmore Village v Crystal Automation Sys, Inc*, 322 Mich App 244, 263; 911 NW2d 241 (2017).

Bartosiewicz argues that Melosi breached the personal loan contracts he entered into with her. Notably, Bartosiewicz does not argue that the two "principles for new agreement" documents were contracts that were breached. Instead, Bartosiewicz has limited her breach-of-contract claim to the personal loan contracts she executed with Melosi. After reviewing the record, it is clear that the trial court failed to appropriately consider Bartosiewicz's claim. While there was a dispute regarding the promises Melosi made, the effect of those promises, and Bartosiewicz's interest in

the business, there does not seem to be any dispute—at least at this stage of the proceedings—that Melosi accepted loans from Bartosiewicz and agreed to repay them.

Further, the loan documents reflect that Bartosiewicz and Melosi mutually assented to all the material terms of the agreement—how much would be loaned, when payment was due, and the effect of failing to pay. Therefore, it appears that there was a contract, or, more appropriately, five contracts. *Miller-Davis Co*, 495 Mich at 178; *Law Offices of Jeffrey Sherbow*, 326 Mich App at 695. Bartosiewicz pleaded that Melosi did not repay the loans as he was required to do under the terms of the agreements, breaching those contracts. *Id.* Lastly, Bartosiewicz also pleaded that she suffered damages from the breach in the form of unpaid sums owed to her. *Id.* The trial court was required to accept as true the well-pleaded allegations of the complaint. *Id.* It therefore erred by granting summary disposition in favor of defendants on this claim.

## V. QUANTUM MERUIT OR UNJUST ENRICHMENT

Bartosiewicz also argues that the trial court erred when it summarily disposed of her quantum meruit and unjust enrichment claims. We agree in part and disagree in part.

Because the trial court, although citing to both MCR 2.116(C)(8) and (C)(10), relied on evidence outside of the pleadings in making its decision, this issue is appropriately reviewed under (C)(10). "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden*, 461 Mich at 120. Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

"This Court has long recognized the equitable right of restitution when a person has been unjustly enriched at the expense of another." *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 197; 596 NW2d 142 (1999). "[W]hether a claim for unjust enrichment can be maintained is a question of law . . . ." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "The essential elements of [an unjust enrichment] claim are (1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 721; 909 NW2d 890 (2017) (quotation marks and citation omitted; alteration in original). The same elements are required to "to sustain a claim of quantum meruit . . . ." *Morris Pumps*, 273 Mich App at 195. This Court has held that "[t]he theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment . . . ." *NL Ventures VI Farmington, LLC v Livonia*, 314 Mich App at 222, 241; 886 NW2d 771 (2016) (quotation marks and citation omitted). Well-established law provides that "a contract will be implied only if there is no express

-13-

contract covering the same subject matter." *Landstar Express America, Inc v Nexteer Auto Corp*, 319 Mich App 192, 201-202; 900 NW2d 650 (2017) (quotation marks and citation omitted).

Bartosiewicz argues that she "invested time, money, labor, equipment, and expertise to the start-up, management, operations and growth of A2Q," defendants received the benefit of those investments, and defendants "would be unjustly enriched if not required to pay the fair value for [] Bartosiewicz's monetary investment, labor, expertise, time[,] extension of credit, use of equipment and any payments made by [] Bartosiewicz for A2Q's vehicle." As it relates to Bartosiewicz's investment of money, as already discussed, Bartosiewicz has personal loan contracts with Melosi for repayment of her monetary investments. Because she has express contracts regarding the terms of repayment of her monetary investment, summary disposition of the portion of her claim relating to her monetary investment in A2Q was appropriate. *Id*.

However, Bartosiewicz also claims that she was not compensated, or not fully compensated, for her investment of time, labor, and expertise into the business, as well as for purchasing equipment and making payments on the Silverado.[11] Defendants argue that she is not entitled to relief on those claims because she bargained for and was paid a salary. In support of that position, defendants argue that Bartosiewicz received checks for $3,300 per month for several months during 2017. However, this does not negate the fact that Bartosiewicz bargained for a salary based on her belief that she would also have an interest in the profits of the business. And the record shows that Bartosiewicz was not paid for the work performed for the business from the time she began until January 2017—about nine months' worth of work. Nor was there evidence presented that the checks written to Bartosiewicz were not only for salary but also were to reimburse her for the purchase of the two smokers and the warming box or for her payments on the truck used for the business. Defendants have not contended or provided evidence that Bartosiewicz had not actually paid for and provided all of those things, or that they were not done for the benefit of the business. Based on the facts pleaded by Bartosiewicz and the documentation introduced as evidence, there remain genuine issues of material fact regarding whether defendants would be unjustly enriched by retaining the benefits allegedly provided by Bartosiewicz. *Meisner Law Group*, 321 Mich App at 721; *Morris Pumps*, 273 Mich App at 195. Consequently, summary disposition on those claims was inappropriate. *Maiden*, 461 Mich at 120.

In sum, the trial court properly granted summary disposition in favor of defendants on Bartosiewicz's unjust enrichment and quantum meruit claims regarding sums owed under the personal loan agreements, but otherwise improperly granted summary disposition on those claims. *Id*.

## VI. CONCLUSION

---

[11] Notably, except for the payments on the truck, Bartosiewicz has already sought many of these same damages in her fraud, civil conspiracy, concert of action, conversion, and claim and delivery claims. However, Bartosiewicz is permitted to plead "as many separate claims or defenses as [she] has, regardless of consistency and whether they are based on legal or equitable grounds or on both." MCR 2.111(A)(2)(b). Therefore, while Bartosiewicz is not entitled to duplicate recoveries, she was within her rights to plead in the alternative. *Id*.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford