*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALISA A. PESKIN-SHEPHERD, PLLC,

        Plaintiff-Appellee,

v

NICOLE BLUME formerly known as NICOLE KNUFF,

        Defendant-Appellant,

and

SEAN BLUME,

        Defendant.

UNPUBLISHED
November 5, 2020

No. 348023
Oakland Circuit Court
LC No. 2016-154544-CK

Before: LETICA, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

In this litigation arising out of a failure to pay attorney fees, defendant Nicole Blume, formerly known as Nicole Knuff, appeals as of right the trial court's judgment in favor of plaintiff[1] for $367,482.21, and other equitable relief.[2] Previously, on October 10, 2018, the trial court granted summary disposition under MCR 2.116(C)(10) to plaintiff on her conversion and breach-

---

[1] Although plaintiff in this case is actually Alisa A. Peskin-Shepherd's law firm, for simplicity we refer to Peskin-Shepherd herself as "plaintiff," and use the pronouns "she" and "her" when referring to plaintiff.

[2] The trial court also entered judgment in favor of defendant Sean Blume, finding that plaintiff had no cause of action against him, and plaintiff has not appealed that decision. Consequently, Sean is not a party to this appeal and his involvement in this case will only be discussed when necessary for a proper understanding of the facts.

-1-

of-contract claims, but not on the issues of whether plaintiff was entitled to treble damages related to the statutory conversion claim and how much interest was payable under the contract. Previously, on November 10, 2016, the trial court also granted summary disposition under MCR 2.116(C)(10) in favor of plaintiff, determining that the retainer agreement was a binding contract and set the rate for attorney fees at $300 per hour. Nicole now challenges these orders and judgment in this appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Nicole hired plaintiff to represent her in her divorce from Richard Knuff. It is undisputed that Nicole and plaintiff signed a retainer agreement, which reflected plaintiff's hourly rate of $300 per hour and required Nicole to pay any and all fees charged. If Nicole was more than 30 days late on any payment, plaintiff was permitted to charge 7% interest on the delinquent debt. After a year of contentious litigation, Nicole and Richard reached an agreement that ultimately resulted in a consent judgment of divorce being entered in the divorce case. In that consent judgment, Nicole explicitly agreed to pay all of plaintiff's legal fees, but for $2,500 for which Richard was responsible, and to give plaintiff a lien on all of Nicole's marital assets to secure that debt. The consent judgment specifically noted that plaintiff maintained a lien on Nicole's real property in Escanaba, Michigan.

After the proceedings ended, Nicole owed plaintiff a significant debt. At one point, Nicole and plaintiff's assistant discussed a payment plan that required Nicole to pay $100 per month. Plaintiff's assistant stated that they would forgo interest while Nicole was paying. About two years after that, in April 2013, Nicole stopped making monthly payments. At that point, the unpaid principal of the debt was $51,098.68. In March 2014, plaintiff started charging interest on Nicole's debt. In May 2014, Nicole sold the Escanaba property without notifying plaintiff, then used the $39,109.08 received from the sale of that property to pay off her other debts. On October 13, 2015, plaintiff sent Nicole a letter, demanding payment of the debt. About two weeks later, Nicole responded to the letter, and then conveyed her sole interest in her house, which was in Rochester Hills, Michigan, to herself and her new husband, Sean Blume, as tenants by the entireties. The quitclaim deed for the conveyance showed that Sean paid less than $100 in consideration for his new interest in the Rochester Hills property.

In August 2016, plaintiff brought this lawsuit, which initially consisted of a breach-of-contract claim against Nicole only. Over the years of litigation and discovery, plaintiff amended her complaint three separate times, ultimately resulting in claims of breach of contract, common-law and statutory conversion relating to the lien on the Escanaba property, and actual and constructive fraudulent conveyance relating to the Rochester Hills property.

Relevantly, the trial court held that Nicole could not challenge plaintiff's $300-per-hour rate because that rate was agreed on in the retainer agreement, which Nicole had not challenged. Later, the trial court also concluded that plaintiff was entitled to summary disposition of her breach-of-contract claim in its entirety, covering the entire unpaid debt and any interest accruing on all debts as they became 30 days delinquent. The trial court also determined there was no genuine issue of material fact that Nicole had committed common-law and statutory conversion

-2-

when she knowingly destroyed plaintiff's lien by selling the collateral out from under her. The trial court thus ordered a bench trial to determine whether treble damages were warranted.

After that three-day hearing, the trial court determined that treble damages for statutory conversion were appropriate, and later, entered judgment in favor of plaintiff. The final judgment of $367,482.21 included: (1) $81,098.38 in damages already determined for the breach-of-contract claim, which based on the unpaid principal of the debt of $51,098.68 and interest of $29,999.70 (2) $153,296.04 for the statutory conversion claim, which trebled the damages on the basis of the unpaid principal of the debt; and (3) $133,087.79 in attorney fees and costs. The latter two awards would accrue interest on the judgment at the statutory interest rate under MCL 600.6013(8) from the complaint filing date of August 15, 2016 until satisfied in full. The trial court also ordered the quitclaim deed conveying the Rochester Hills house to be set aside, and granted plaintiff an equitable lien on that property.

This appeal followed.

## II. STATUTORY CONVERSION

Nicole argues the trial court erred by determining that she was liable for statutory conversion and miscalculating treble damages. We disagree.

## A. SUMMARY DISPOSITION

First, Nicole challenges the trial court's determination that summary disposition in favor of the plaintiff on plaintiff's statutory conversion claims was warranted.

## 1. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper when there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks omitted). "Questions of statutory interpretation are also reviewed de novo." *Rowland v Washtenaw Co Road Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

2. ANALYSIS

Nicole argues that plaintiff's conversion claims were not properly brought under applicable Michigan law.

"Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks omitted). "For instance, conversion may be committed by the refusal to surrender property on demand." *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2014). "In general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are wilful, although the tort can be committed unwittingly if unaware of the plaintiff's outstanding property interest." *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 391; 486 NW2d 600 (1992). "Treble damages for statutory conversion are available under MCL 600.2919a(1)(a), but, in addition to the common-law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's 'own use.' " *Magley*, 325 Mich App at 314 n 3, quoting *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 356; 871 NW2d 136 (2015), aff'd 497 Mich 337 (2015). "Good faith, mistake, and ignorance are not defenses to a claim of conversion." *Id*. at 315.

Nicole first argues that the trial court improperly granted summary disposition in favor of plaintiff because plaintiff's lien was not personal property. We have defined " 'personal property' " as " 'everything that is the subject of ownership, not coming under denomination of real estate.' " *People v Fox (After Remand)*, 232 Mich App 541, 553; 591 NW2d 384 (1998), quoting *Black's Law Dictionary* (6th ed). Although this Court and our Supreme Court have never specifically stated that an attorney's lien is a property interest capable of being converted, neither has provided a basis of law that could lead to any other conclusion. Beginning with *Stewart v Young*, 247 Mich 451, 455; 226 NW 222 (1929), our Supreme Court held that the proceeds of a sale of real estate, to the extent that a party had an interest in those proceeds, were considered personal property, not real property. Supporting that conclusion, our Supreme Court in *Garras v Bekiares*, 315 Mich 141, 148-149; 23 NW2d 239 (1946) (quotation marks omitted), held that money itself is considered personal property, and, "an action will lie for the conversion thereof, where there is an obligation to keep intact or deliver the specific money in question, and where such money can be identified."

Most relevant here is our opinion in *Warren Tool Co v Stephenson*, 11 Mich App 274; 161 NW2d 133 (1968). In that case, the plaintiff sued a corporation's president and general manager personally, claiming that the individuals committed conversion. *Id*. at 276. To establish that claim, the plaintiff contended that, on the basis of an agreement between the plaintiff and the defendants, an equitable lien had been created. *Id*. at 279-280. Specifically, the corporation had contacted the plaintiff regarding the potential for the plaintiff to perform work for the corporation. *Id*. at 277. Concerned regarding the corporation's ability to pay, the plaintiff requested additional security. *Id*. In response, the defendants agreed they would instruct the corporation's bank to pay the plaintiff once checks from a third-party account were deposited by the corporation. *Id*. at 277-278. Thus, according to the deal, once the corporation was paid by the third party, the corporation would deposit the check in its bank account, and the bank would pay the plaintiff directly. *Id*. at

278. The parties agreed to that arrangement and sent letters to the bank verifying their contract and identifying the third-party account from which the plaintiff should be paid. *Id*.

Later, when the third party submitted payment in the form of a check to the corporation, the defendants decided not to deposit the check in the corporation's bank account. *Id*. at 278-279. Instead, the defendants had the check certified at the drawee bank, went to another bank, and exchanged the check for eight cashier's checks. *Id*. at 279. The money was never paid to the plaintiff, despite the fact that the plaintiff performed the contracted work; shortly thereafter, the corporation filed for bankruptcy. *Id*. As noted, the plaintiff then sued the defendants personally, claiming the defendants had converted the plaintiff's security interest in the payment from the third party. *Id*. at 279-280. The trial court entered a judgment of no cause of action in favor of the defendants. *Id*. at 280.

On appeal, we reversed, holding that the plaintiff had established an equitable lien on the payment from the third party. *Id*. at 293-294. We then held that, "[w]hen [the defendants] deliberately obliterated [the plaintiff's] interest in the check, it would appear on the present record that it converted property belonging to [the plaintiff] . . . ." *Id*. at 298. Although we remanded the case for further proceedings, the holding of the case was clear—an equitable lien securing payment for work performed by the plaintiff is a form of personal property that can be converted. *Id*. at 298-299.

While *Warren Tool* does not directly address an attorney lien on real property, its correlation with the present case is obvious. Nicole voluntarily granted plaintiff a lien on the Escanaba property, like the defendants in *Warren Tool* who granted the plaintiff a security interest in the payment from the third party. Despite voluntarily doing so, Nicole then sold the Escanaba property without notifying plaintiff and used the proceeds for the payment of other bills. Similarly, in *Warren Tool*, the defendants liquidated the collateral and used it for other purposes. As we succinctly stated in *Warren Tool*, 11 Mich App at 298, Nicole committed conversion when she "deliberately obliterated" plaintiff's interest in the collateral. Further, in a more recent opinion, the foregoing analysis was buttressed when we indicated that the same logic used in *Warren Tool* would apply to an established attorney-charging lien. See *Dunn*, 303 Mich App at 777-778 (holding that "[w]ithout a charging lien, [an attorney] had no legal interest in the funds and cannot sustain a conversion claim[;]" suggesting, but not deciding, that the existence of such a lien would have warranted a different outcome).

Plaintiff and the trial court relied on a decision of the United States Bankruptcy Court for the Eastern District of Michigan, which in turn relied on the Michigan caselaw, in determining that an attorney-charging lien is a property interest that can be converted. *In re Stollman*, 404 BR 244, 263 (Bankr ED Mich, 2009). Pertinently, the bankruptcy court decided a case where the bankruptcy debtor had voluntarily given his attorneys in his divorce case a lien on the debtor's retirement accounts. *Id*. at 263-264. The bankruptcy court acknowledged that the attorneys had both an attorney-charging lien as a result of their representation, and a "consensual lien" under a settlement agreement and judgment of divorce. *Id*. at 264. The court noted that the attorneys' liens were "property interests" in the retirement accounts and that the debtor had disbursed the proceeds from the liquidated retirement accounts to creditors other than his attorneys. *Id*. at 264-265. The bankruptcy court concluded that, in doing so, the debtor had committed conversion under

-5-

Michigan law by using the funds "in a manner inconsistent with the lien rights of" the attorneys. *Id*. at 265.

Notably, the analysis in *Stollman* corresponds with binding Michigan caselaw on the topic of conversion, conforms to the factually similar analysis found in *Warren Tool*, 11 Mich App at 298-299, and does not run afoul of the suggested law in *Dunn*, 303 Mich App at 777-778. Thus, we have support to follow the uncontroverted logic of those cases and affirm the trial court's conclusion that Nicole's sale of the Escanaba property and use of the proceeds to pay other bills constituted both common-law and statutory conversion.

Nicole makes two unavailing arguments countering this conclusion. First, she argues that plaintiff's conversion claim was improper when the thing allegedly converted was real property—the Escanaba property. As already discussed, though, the "personal property" that was converted was plaintiff's lien, not the Escanaba property itself. *Warren Tool*, 11 Mich App at 298-299; *Stollman*, 404 BR at 264-265. Second, Nicole argues that plaintiff could not maintain a claim for conversion without having reduced her lien to a judgment for a specific amount or foreclosed on the lien. As a corollary to that argument, Nicole contends that she should have been permitted to litigate the reasonableness of plaintiff's fees.[3]

We first address Nicole's argument that she should have been able to litigate the reasonableness of plaintiff's fees. Initially, we note an apparent misunderstanding of Nicole's argument as it related to the trial court's orders. In the November 10, 2016 order, the trial court did not determine that Nicole could not challenge the total fee charged by alleging that certain work was not performed or took too long; rather, it held that Nicole could not challenge plaintiff's rate of $300 per hour.

Moreover, relevant caselaw supports this determination. In an early decision, our Supreme Court noted that when "there was a valid agreement fixing the compensation, we are not concerned with the reasonableness of the fees." *Burnett v King*, 263 Mich 33, 36; 248 NW 540 (1933). More recently, in *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005), our Supreme Court reiterated that "[a] fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." Thus, the Court specifically stated that "[w]hen a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Id*. at 468-469. The Court's determinations in that regard are logical, considering that

---

[3] To the extent that Nicole attempts to challenge the legitimacy of the lien because of the lack of a judgment or plaintiff's failure to record it, that argument is an improper collateral attack on the divorce court's order determining that Nicole had violated the legal and valid lien on the Escanaba property. "It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]" *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014). If Nicole wished to challenge that determination, she was required to appeal the divorce court's order. Consequently, we cannot consider Nicole's arguments to the extent they could be construed as a collateral attack on the divorce court's decision. *Id*.

"[i]n resolving disputes between attorney and client regarding the amount of compensation due under a written fee agreement, courts apply general rules of contract construction." *Wistrand v Bese*, 23 Mich App 423, 427; 178 NW2d 826 (1970).

In this case, Nicole admitted she agreed to the terms of the retainer agreement, which specifically stated plaintiff's rate was $300 per hour. Throughout the case, Nicole never challenged that she agreed to that rate. In fact, Nicole acknowledged that she made several payments on debt accruing when plaintiff charged that rate. Thus, there was no question of fact that Nicole entered into the contract and agreed to pay plaintiff's rate of $300 per hour. Allowing Nicole to now challenge that rate solely on the ground of reasonableness would be to "undermine[] the parties' freedom of contract." *Rory*, 473 Mich at 468-469. Consequently, when the trial court held that Nicole was not permitted to argue that plaintiff's *rate* was unreasonable, it did not err. *Id*.

On appeal, Nicole appears to construe the trial court's decision in the November 10, 2016 order as denying her the chance to litigate the hours billed on the grounds that plaintiff overbilled or billed for work that was not performed. The trial court's order did not so state. As just discussed, the trial court's first order merely set the rate of $300 per hour. But the trial court considered allegations of overbilling when it issued the October 10, 2018 opinion and order regarding plaintiff's second revised motion for summary disposition. In that opinion and order, the trial court reasoned that, despite over two years of litigation, Nicole had not identified a single charge that was billed for a time longer than it took or that was billed for unperformed work. Additionally, Nicole failed to present expert testimony that would suggest plaintiff billed far too many hours for work that should take fewer hours.

In contrast, plaintiff provided voluminous documentation of the hours billed, the work performed to support those hours, and averred that all of the work was performed and billed contemporaneously. As noted, other than purportedly objecting to the total fee billed by plaintiff, Nicole failed to identify any specific objection to plaintiff's charges. When considering a motion under MCR 2.116(C)(10), as here, "[a] reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 694; 930 NW2d 416 (2019) (quotation marks omitted). In other words, at the summary disposition phase, Nicole was required to present some evidence, other than her conjecture, to support her claim that plaintiff overbilled Nicole in her divorce case. *Id*. Nicole failed to do so. Thus, the trial court was only left to consider the uncontroverted evidence supplied by plaintiff. Therefore, the trial court appropriately granted summary disposition in favor plaintiff on the breach-of-contract claim without first holding an evidentiary hearing regarding plaintiff's hours billed and work performed. *Id*.

As already noted, Nicole finally argues that the trial court erred by concluding plaintiff could successfully assert a claim for conversion without first foreclosing on the lien or obtaining a judgment setting the amount of debt secured by the lien. Nicole essentially argues that the law does not permit a claim of conversion when the trial court failed to first determine the amount of the debt. Nicole insists the trial court did not do that in this case because it refused to allow her to litigate the reasonableness of plaintiff's fees. As already discussed, the trial court acted properly when it held that Nicole could not challenge plaintiff's $300-per-hour rate and that Nicole failed

to adequately dispute the hours billed and work performed. Thus, when the trial court entered the summary disposition order regarding the conversion claims, on October 10, 2018, the trial court *had* determined the amount of the debt that was secured by the Escanaba property lien. Specifically, the trial court had properly decided there was no genuine issue of material fact that the amount of legal fees owed when plaintiff and Nicole agreed to the lien from the consent judgment of divorce was $51,098.68. Therefore, even assuming that Nicole's legal arguments are grounded in Michigan caselaw,[4] they lack merit because there is no factual support. Nicole, as the appellant in this case, "bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Petraszewsky v Keeth*, 201 Mich App 535, 540; 506 NW2d 890 (1993). Because the record shows that the amount of the lien was determined before the trial court determined the conversion issue, Nicole's argument cannot warrant reversal. *Id*.

## B. TREBLE DAMAGES

Nicole next argues that the trial court miscalculated the treble damages under MCL 600.2919a(1). We disagree.

### 1. STANDARD OF REVIEW

"We review for clear error a trial court's findings of fact and review de novo its conclusions of law." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 578-579; 939 NW2d 705 (2019) (quotation marks omitted). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*. at 579 (quotation marks omitted). "Resolution of the issue presented turns on the definition of actual damages, which presents a question of law that this Court reviews de novo." *Alken-Ziegler, Inc v Hague*, 283 Mich App 99, 102; 767 NW2d 668 (2009).

### 2. ANALYSIS

Nicole argues the trial court clearly erred by calculating treble damages on the basis of the underlying debt, rather than the value of the property encumbered by the lien. "Treble damages for statutory conversion are available under MCL 600.2919a(1)(a), but, in addition to the common-

---

[4] Nicole's assertion is dubious, considering that we have held that an attorney-charging lien is enforceable against real property when the attorney and client specifically agreed to the lien on the real property in question, as happened in this case. *George v Sandor M Gelman, PC*, 201 Mich App 474, 478; 506 NW2d 583 (1993) (citation omitted) ("We conclude that an attorneys' charging lien for fees may not be imposed upon the real estate of a client, even if the attorney has successfully prosecuted a suit to establish a client's title or recover title or possession for the client, unless (1) the parties have an express agreement providing for a lien, (2) the attorney obtains a judgment for the fees and follows the proper procedure for enforcing a judgment, or (3) special equitable circumstances exist to warrant imposition of a lien."). Because the lien was valid under applicable law, as the divorce court held, and the lien was the property interest converted in this case, it follows that a judgment or foreclosure simply was not required. *Id*.

law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's 'own use.' " *Magley*, 325 Mich App at 314 n 3, quoting *Aroma Wines*, 497 Mich at 356. "[S]omeone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Id.*, quoting *Aroma Wines*, 497 Mich at 359 (alteration in original). Nicole does not challenge the trial court's determination regarding the appropriateness of treble damages, only the trial court's calculation of them.

The statute indicates the plaintiff in a conversion case "may recover 3 times the amount of actual damages sustained . . . ." MCL 600.2919a(1). Nicole claims plaintiff's "actual damages" were the value of the Escanaba property. In contrast, plaintiff asserts the trial court properly determined that her actual damages were the amount of the underlying debt. In *Alken-Ziegler*, 283 Mich App at 102-103, this Court undertook defining the term "actual damages" in MCL 600.2919a(1):

> The statute does not define the term "actual damages." When interpreting statutory language, our obligation is to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute. When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. We give undefined statutory terms their plan [sic] and ordinary meanings. In those situations, we may consult dictionary definitions. *Id*.

> *Black's Law Dictionary* (8th ed) defines "actual damages" as: "An amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." Applying this definition to MCL 600.2919a, "actual damages" means the actual loss a complainant suffered as a result of a defendant's [] conduct. [*Alken-Ziegler*, 283 Mich App at 102-103 (citations omitted).]

We also stated in *Alken-Ziegler*, 283 Mich App at 104, that "MCL 600.2919a is a punitive statute that provides for recovery of three times the amount embezzled. Punitive damages reflect a worthy public policy consideration of punishing dishonest defendants and setting an example for similar wrongdoers."

Earlier, we also held that "[t]he measure of damages for the conversion of personal property is the value of the property at the time of the conversion, in the absence of any testimony establishing a peculiar value in the goods to the owner." *Bernhardt v Ingham Regional Med Ctr*, 249 Mich App 274, 280; 641 NW2d 868 (2002) (quotation marks omitted). Stated differently, "[i]t is undoubtedly true that damages for the conversion of articles having a regular market value are measured generally by that value." *Id*. (quotation marks omitted). Admittedly, this calculation is usually more straight forward because the personal property converted has a fair market value—in *Bernhardt*, the converted property was jewelry.

In this case, the issue is confused by the existence of real property that was encumbered by a lien. However, it becomes clear when we consider that the personal property that was converted was plaintiff's *lien*, not the Escanaba property. Thus, the actual damages suffered must be

calculated using the "value of the [lien] at the time of the conversion . . . ." *Id*. (quotation marks omitted).

According to the terms of the lien itself, which was established in the consent judgment of divorce, plaintiff "shall retain a lien on the assets awarded to [Nicole], including [Nicole's] interest in the Escanaba property, to insure payment of attorney fees." Thus, the value of the lien was the amount of unpaid attorney fees. It is undisputed that, at the time Nicole sold the Escanaba property, plaintiff was owed $51,098.68 in unpaid legal fees. Consequently, the trial court did not err when it calculated plaintiff's treble damages on that basis, rather than the value of the Escanaba property. This is because the court was concerned with the value of the lien, not the value of the property. *Alken-Ziegler*, 283 Mich App at 102-103; *Bernhardt*, 249 Mich App at 280.

Nicole argues this result was overly harsh considering she only realized income in the amount of the value of the property, but the trial court punished her for more than that. As we have held, though, the conversion statute's treble damages provision is meant to be punitive in nature. *Alken-Ziegler*, 283 Mich App at 104. Further, allowing Nicole to limit her damages on the basis of what she was paid, rather than the value of the property right converted, would encourage potential converters to undervalue the property being converted or underreport the price paid, in the event their wrongdoing is eventually discovered. While that result might seem overly harsh in the present case, because there was no evidence presented of such misdeeds by Nicole, the punitive nature and plain language of MCL 600.2919a(1)(a) requires this result. *Alken-Ziegler*, 283 Mich App at 104.

## III. BREACH OF CONTRACT

Nicole argues the trial court erred in summarily disposing, pursuant to MCR 2.116(C)(10), the issue of the appropriate amount of interest for plaintiff's breach-of-contract claim. We agree.

### A. PRESERVATION

"Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *Marik v Marik*, 325 Mich App 353, 358; 925 NW2d 885 (2018) (quotation marks omitted). Plaintiff argues Nicole waived this issue by failing to timely raise it. However, in Nicole's response to plaintiff's second revised motion for summary disposition, Nicole specifically asserted that a factual dispute remained regarding the calculation of interest, citing both to plaintiff's billing statements that did not contain interest charges and the e-mail from plaintiff's assistant informing Nicole that she would not be charged interest. Thus, Nicole raised this issue in a timely manner and preserved it for our review.

### B. ANALYSIS

Nicole argues the trial court acted improperly when it granted summary disposition on the issue of calculation of interest under the contract. In asserting a claim for a breach of contract, a party "must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). Nicole does not challenge the existence of the contract, but the calculation of interest. As discussed earlier, Michigan "[c]ourts enforce contracts according to their unambiguous terms because doing so

respects the freedom of individuals freely to arrange their affairs via contract." *Rory*, 473 Mich at 468. Thus, "[a] fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Id*.

In the contract at issue here, the parties agreed that Nicole "may be charged interest at the annual rate of 7% of any balance that is not paid within 30 days after the date of the bill." "The term 'may' is permissive and indicates discretionary activity." *Aroma Wines*, 303 Mich App at 449. Thus, under the terms of the contract, plaintiff had discretion regarding whether to charge interest when Nicole was delinquent in paying. According to documentation submitted by plaintiff, plaintiff chose not to charge interest until March 31, 2014. Indeed, in a June 2011 e-mail, plaintiff's assistant told Nicole she would not be charged interest on her account, although it was implied that this agreement relied on Nicole's continued payment of $100 per month. It is undisputed that Nicole continuously paid $100 per month until April 2013.

The plain and unambiguous language of the contract permitted plaintiff to decide whether to charge interest when Nicole's payments were delinquent. From the record provided, it appears plaintiff chose not to charge interest to Nicole for several years. There also was documentary evidence provided that suggested plaintiff had specifically agreed not to charge interest, via an e-mail from Nicole's assistant, so long as Nicole continued to make monthly payments. While plaintiff was permitted to challenge the veracity of that e-mail during the bench trial, the trial court decided the issue during the summary disposition phase of the litigation before it could be argued. Clearly, there was a question of fact regarding whether and when interest should accrue on the debt owed by Nicole. Although the plain and unambiguous language of the contract provided discretion to plaintiff regarding the charging of interest, it did not permit plaintiff to retroactively request payment of that interest after impliedly or explicitly declining to charge it. *Rory*, 473 Mich at 468. In granting summary disposition in favor of plaintiff on that issue, without considering the factual dispute and Nicole's evidence, the trial court erred. *Auto-Owners Ins Co*, 322 Mich App at 224. Thus, we vacate the portions of the trial court's orders and judgment related to the calculation of interest and remand for the trial court to determine the factual question of when and if interest was appropriate in this case.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

We do not retain jurisdiction.


/s/ Anica Letica
/s/ Karen M. Fort Hood